# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

## (GREENBELT DIVISION)

| | |
|---|---|
| **MARJORIE STEWART** | Civil Case Number: |
| 19032 Canadian Court<br>Montgomery Village, Maryland  20886 | |
| *and* | _____ |
| **JAY NACHBAR** | |
| 9958 Forest View Place<br>Montgomery Village, Maryland  20886 | |
| *and* | |
| **GERALD A. LEMBACH** and his wife,<br>**DEBBIE L. LEMBACH** | *Complaint (Class Action) and<br>Demand for Jury Trial* |
| 220 12th Street<br>Pasadena, Maryland  21122 | |

220 12th Street
Pasadena, Maryland  21122

(Each Plaintiff individually and on be-half of all Maryland residents similarly situated.)

**Plaintiffs**

*v.*

**HOWARD NORMAN BIERMAN**

Suite 200, 4520 East West Highway
Bethesda, Maryland 20814

*and*

**GEORGE JACOB GEESING**

Suite 200, 4520 East West Highway
Bethesda, Maryland 20814

*and*

**CARRIE MICHELE WARD**

Suite 200, 4520 East West Highway
Bethesda, Maryland 20814

*and*

**BIERMAN, GEESING, WARD & WOOD, LLC**

Suite 200
4520 East West Highway
Bethesda, Maryland 20814

Serve on Registered Agent:
G. Jacob Geesing
Suite 200
4520 East West Highway
Bethesda, Maryland 20814

**Defendants**

---

## COMPLAINT

## (CLASS ACTION)

AND

## DEMAND FOR TRIAL BY JURY

---

Plaintiffs Marjorie Stewart, Jay Nachbar, and Gerald A. Lembach and his wife Debbie L. Lembach, individually and on behalf of all other Maryland residents similarly situated, by their attorneys; Gerald Solomon and John J. Bascietto of Solomon & Bascietto, LLC, Scott C. Borison, and Michael Gregg Morin; sue Defendants; Howard Norman Bierman, George Jacob Geesing, Carrie Michele Ward, and Bierman, Geesing, Ward & Wood, LLC; and state:

## INTRODUCTORY STATEMENT

1.  Maryland Statutes and Rules regulate foreclosure proceedings that are initiat-
ed by a Trustee or Substitute Trustee under a Deed of Trust.  The Maryland Rules re-
quire that the Trustee file various documents with the Circuit Court in the County where
the property is located.  The documents required to be filed include an order to docket,
an appointment of substitute trustees, if applicable, and a number of affidavits for the
court's review and consideration in connection with the foreclosure proceeding.

2.  This class action addresses the failure of the Maryland attorneys who also
function as Substitute Trustees under Deeds of Trust to meet their obligations under
Maryland law.  The Defendants' have had a pattern and practice of filing and supporting
<u>thousands</u> of foreclosures by multiple documents that state they are executed by the
Defendant(s) but are not documents executed by the Defendant(s)[1] *e.g.*, orders to
docket, affidavits, appointments of Substitute Trustees, and trustee deeds.  The result
of the Defendants' conduct was that Defendants intentionally or unintentionally caused
hundreds if not thousands inaccurate documents to be filed as part of foreclosure pro-
ceedings before Maryland State Courts to obtain jurisdiction of the state courts over
foreclosure proceedings.  Defendants, who are Officers of the Court and knew or should

---

[1] Defendants have consistently stated that the documents contained truthful infor-
mation and therefore were not "false" or "perjurious."  Defendants have also stated that
the documents were executed with the knowledge of the Substitute Trustee and there-
fore not forged.  However, the documents which state that they are executed by some-
one who did not in fact execute the documents are not factually accurate.

have known that their conduct did not meet the requirements of Maryland law and interfered with the proper administration of foreclosure proceedings. The Defendants submitted these documents to comply with time schedules that they could not meet if they had to review and execute each document that was to be submitted by them. This was done to maximize their profits from filing more foreclosures then they could handle. The Defendants' conduct devastated families, cost families the equity in their homes and as a final insult, converted the victims' possessory rights by evicting families months faster than possible if the Defendants had conducted their business in compliance with Maryland statutes and Rules.

3. In 2008, the Maryland enacted significant and comprehensive changes to statutes and changed Maryland Rules governing foreclosures with the stated intent of affording Maryland consumers and homeowners more protections and notice. As a compromise to affording homeowners additional protections, the Legislature imposed a number of conditions precedents to a foreclosure, a sale, or a ratification of sale in exchange for allowing Substitute Trustees to file Orders to Docket using affidavits as opposed to requiring production of the underlying documentation, unless challenged. The Defendants' reaction to these changes was simply to expand their production line of fabricated and counterfeit affidavits and to file more fabricated and counterfeit affidavits in each case. To produce as many fabricated documents in the shortest possible time, the Defendants required their employees, who were notaries, to authenticate documents that failed to identify the person who had actually executed the documents.

Simply put, the Defendants adopted a "robo-signer" methodology and their law firm staff became "robo-notaries." When that system failed to produce enough profits for the Defendants, the Defendants required their employees to fabricate notaries' signatures and use notary seals. In other words, the Defendants' assembly line foreclosure prosecution became to foreclosure misconduct what Henry Ford was to automobile production.

4. The Defendants were so successful in their conduct related to the court filings to initiate the foreclosures that they extended it to the execution of trustee deeds. The Defendants, in their roles as trustees and grantors on post-foreclosure deeds are required to execute each such deed. The Defendants had their "signatures" fabricated by having their clerical employees sign the Defendants' names without the legal authority to do so. At some point, the fabrication of three or four trustees' signatures on each deed became too cumbersome for the Defendants' desire for greater production and even greater profits. The Defendants switched to appointments of substitute trustees that would allow the fabrication of only one trustees' signature on each trustees' deed. In doing so, the Defendants created, intentionally or not, an additional and significant defect to the foreclosure process because each such fabrication of a trustees' deed renders the deed void *ab initio* and is a cloud on the title(s) that flowed from the instrument. The Plaintiffs estimate that there are substantially more than 4,000 Maryland residents who believe that they hold valid title to their homes; however, their chain of title is, at best, clouded and, most likely, fatally flawed.

## JURISDICTION AND VENUE

5.  Jurisdiction of this Court arises under 15 U.S.C. § 1692 and 28 U.S.C. § 1337.

6.  Supplemental jurisdiction for the State law claims arises under 28 U.S.C. § 1367.

7.  Declaratory and injunctive relief are available pursuant to 28 U.S.C. §§ 2201 and 2202 and Md. Code Ann., Cts. & Jud. Proc., §§ 3-401 – 3-415.

8.  Venue in this District is proper in that the Defendants transact business within the District and the conduct complained of occurred in the District.

## THE PARTIES

9.  Plaintiff Marjorie Stewart ("**Stewart**") is a natural person who resides in Montgomery Village, Montgomery County, Maryland.

10.  Plaintiff Jay Nachbar ("**Nachbar**") is a natural person who resides in Montgomery Village, Montgomery County, Maryland.

11.  Plaintiffs Gerald A. Lembach and his wife Debbie L. Lembach (collectively, "**Lembach**") are natural persons, husband and wife, and reside in Pasadena, Anne Ar-undel County, Maryland.

12.     Defendant Howard N. Bierman ("**Bierman**") is a natural person who, upon information and belief, resides in Alexandria, Alexandria County, Virginia.

13.     Defendant George Jacob Geesing ("**Geesing**") is a natural person who, upon information and belief, resides in Bethesda, Montgomery County, Maryland.

14.     Defendant Carrie Michele Ward ("**Ward**") is a natural person who, upon information and belief, resides in Rockville, Montgomery County, Maryland.

15.     Defendant Bierman, Geesing, Ward & Wood, LLC ("**BGWW**") is a Maryland limited liability company (SDAT No. W04360996) with its principal place of business at Suite 200, 4520 East West Highway, Bethesda, Montgomery County, Maryland.

16.     Currently unnamed as a party but critical to the improper conduct of the Defendants, Fidelity National Information Services, Inc. and its affiliated business, (collectively "**FNIS**"), has its principal place of business in Jacksonville, Florida.

## FACTUAL ALLEGATIONS

### *Factual Allegations Regarding the Defendants*

17.     FNIS is a multinational firm with extensive involvement in the American mortgage loan, servicing, and foreclosure process.

17.1.   FNIS is not a law firm.

17.2.   Normal business practices for lenders in the FNIS network, with intentions to foreclose, are to package the information and documents and forward them to FNIS.

17.3.   FNIS has established contracts with the leading foreclosure firms in numerous states including Maryland.

17.4.   Once FNIS has contracted with a local foreclosure firm, always with FNIS's profits being the dominant issue, FNIS forwards case information via mail and wire.  Throughout the foreclosure process, communication between FNIS and the local law firm is via wire and mail.

17.5.   Upon information and belief, FNIS requires that all communication between the lender or servicers and the trustees must go through FNIS.  Direct communication between the lender or servicer and the trustees foreclosing is rare.

18.   Upon information and belief, FNIS places the vast majority of the current foreclosure work conducted by the Defendants.

19.   During all periods relevant to this civil action, BGWW was a law firm.

19.1.   From 20 March 1996 through 24 February 2002, BGWW was known as Bierman and Geesing, LLC.

19.2.   From 25 February 2002 through 7 January 2010, BGWW was known as Bierman, Geesing & Ward, LLC.

19.3.   From 8 January 2010 to present, BGWW has been known as Bierman, Geesing, Ward & Wood, LLC.

19.4.  (In this Complaint, the Plaintiffs will use "**BGWW**" for all references to the law firm.)

20.    During all periods relevant to this class action, Bierman, Geesing and Ward were each an attorney admitted to the practice of law in the State of Maryland.

21.    Bierman, Geesing, and Ward each operated and managed BGWW.

22.    While the level of operation and management of BGWW by Bierman, Geesing, and Ward, varied in degree during the periods relevant to this civil action, the collective operation and management of BGWW by Bierman, Geesing, and/or Ward has been continuous for more than eight years.

23.    During all periods relevant to this civil action, BGWW conducted extensive legitimate business in addition to the acts complained of in this Complaint.

24.    During all periods relevant to this class action, Bierman, Geesing or Ward were each a substitute trustee pursuant to Deed of Appointment of Substitute Trustee, against real property that was an owner-occupied residence, that secured a loan made to Maryland consumer(s).

25.    During all periods relevant to this class action, Bierman, Geesing, and Ward were members of and principals of a law firm, BGWW.

26.    During periods relevant to this class action, Bierman, Geesing and Ward each directed, controlled, and operated BGWW.

27.     During all periods relevant to this class action Bierman, Geesing, or Ward docketed foreclosure actions against Maryland consumers who were owner-occupants of the property that were the subject of the foreclosure.

28.     Additionally, the Defendants Bierman, Geesing, or Ward conducted litigation or supervised litigation on behalf of Bierman, Geesing, Ward, and BGWW once the foreclosure became contested.

29.     Throughout the past few years, Bierman, Geesing and Ward directed, operated, and managed the BGWW employees who manufactured fabricated documents by the thousands.

29.1.   The fabricated documents included orders to docket and other documents that have to be submitted under oath in order for the court to obtain and retain jurisdiction in foreclosure actions.  A small representative sample of the fabricated orders to docket is attached as **Plaintiffs' Exhibit No. 1**.

29.2.   The Defendants did not execute the documents, including the affidavits.  The admission of Geesing on this issue in one state court case is attached as **Plaintiffs' Exhibit No. 2**.

29.3.   The Defendants required their employees to fabricate the documents by improperly signing the Defendants' signatures on the documents.

29.4.   The Defendants then required their notaries to certify the deceitful documents.

29.5.  At some point in time, the Defendants sought to minimize the time required to manufacture counterfeit documents by requiring their employees to forge the signatures of notaries.  Those employees who would not cooperate in the scheme were, upon information and belief, fired.

29.6.  The Maryland Secretary of State is currently investigating the improper certification and attestation of documents from Maryland law firms.  To date, the Secretary of State has decommissioned four notaries employed by BGWW and refused to re-commission one more.  **Plaintiffs' Exhibit No. 3**.

29.7.  Upon information and belief, the Secretary of State's investigation is continuing.

29.8.  The five notaries decommissioned to date by the Secretary of State are the proverbial tip of the iceberg.  Additional notaries and employees of BGWW who were, upon information and belief, actively involved in the manufacture of fabricated documents include David A. Edlavitch (**Plaintiffs' Exhibit No. 4**), Anne M. Herrera (**Plaintiffs' Exhibit No. 5**), Annette M. Donovan (**Plaintiffs' Exhibit No. 6**), Maurice T. Sams (**Plaintiffs' Exhibit No. 7**), Joyce M. White (**Plaintiffs' Exhibit No. 8**), Janice M. Hill (**Plaintiffs' Exhibit No. 9**), Derrick L. Long (**Plaintiffs' Exhibit No. 10**), Rachel Bayard (**Plaintiffs' Exhibit No. 11**), and Michelle J. Simon (**Plaintiffs' Exhibit No. 12**).

30. Throughout the past few years, Bierman, Geesing, and Ward directed, operated, and managed the BGWW employees who manufactured fraudulent trustee deeds by the thousands.

30.1. As trustees, it is the responsibility and obligation of Bierman, Geesing, and Ward to personally execute trustees' deeds after the successful ratification of a foreclosure sale.

30.2. There is no legal authority or basis for trustees to delegate the responsibility of executing trustees' deed to any person other than a trustee.

30.3. From 2004 to the present, Bierman, Geesing, and Ward have required their clerical employees to execute the signatures of Bierman, Geesing, Ward, and others on trustee deeds. Plaintiffs have attached random examples of such copies of recorded fabricated trustee deeds for years 2004 (**Plaintiffs' Exhibit No. 13**), 2005 (**Plaintiffs' Exhibit No. 14**), 2006 (**Plaintiffs' Exhibit No. 15**), 2007 (**Plaintiffs' Exhibit No. 16**), 2008 (**Plaintiffs' Exhibit No. 17**), 2009 (**Plaintiffs' Exhibit No. 18**), and 2010 (**Plaintiffs' Exhibit No. 19**).

30.4. At some point, the fabrication of three or four trustee's signatures on each trustees' deed became too cumbersome. The Defendants resorted to the simplification of including in the appointment instruments the provision that any one of the trustees could execute documents and bind all trustees. After the change in the appointment instruments, the Defendants were only required to have one trustees' signature fabricated for each deed.

30.5.   Each of the extract examples provided in Plaintiffs' Exhibit Nos. 13 - 19 contains the certification of a notary.   Every such certification was false and was known to the notary to be false when the notary executed the certification.

30.6.   Bierman, Geesing, and Ward each knew that each of the trustees' deeds would be recorded in the land records of the relevant county.   In many cases, the trustees' deeds were recorded or caused to be recorded by Bierman, Geesing or Ward.

30.7.   Each such trustees' deed is void *ab initio* and transfers no interest in real property.

31.   The Defendants knew when they recorded, or caused to be record, the counterfeit trustees' deeds that the vast majority of all property referenced by the counterfeit deeds would be purchased by consumers for personal use and that the purchases would be funded by mortgages.

32.   Bierman, Geesing, and Ward knew that the lending institutions providing mortgages and the general public would rely on the apparent validity of the trustee deeds.

33.   There was no way of any of the parties affected by these actions could know of the defects in the documents which claimed to have been executed by the Defendants when they were not executed by the Defendants.

34.     As each counterfeit trustee's deed is void *ab initio*, title for each property remains in the name of the last person in title prior to the execution and recordation of the counterfeit instrument.

### *Factual Allegations Regarding Marjorie Stewart*

35.     Stewart owned real property known as 19032 Canadian Court, Montgomery Village, Montgomery County, Maryland 20886 ("**Stewart Property**").

36.     Stewart fell behind on her mortgage payments.

37.     Upon information and belief, FNIS forwarded portions of the documents for the foreclosure of the Stewart Property to BGWW via both mail and wire.

38.     Upon information and belief, during the entire foreclosure process, BGWW continued to communicate with FNIS via wire.

39.     On or about 21 September 2009, the alleged note holder lender for the Stewart Property, OneWest Bank, FSB, allegedly appointed Bierman, Geesing, and Ward as substitute trustee ("**Stewart Appointment**") under a deed of trust; however, the purported signature of Bierman on the Appointment, upon information and belief, was not executed by Bierman but was fabricated by an employee of Bierman.

40.     Upon information and belief, the "signature" of the Trustee on the Stewart Appointment is fabricated and is not the actual signature of any attorney including the Trustees.

41. On 30 September 2009, Bierman, Geesing, and Ward docketed a foreclosure against the Stewart Property, *Bierman, et al. v. Stewart*, Circuit Court for Montgomery County, case no. 321204V ("**First Stewart Foreclosure**").

42. The fabricated Order to Docket, with the fabricated affidavits attached, was served via mail on or about 16 October 2009.

43. The BGWW attorneys personally involved in the direction, operation, and management of the First Stewart Foreclosure include Geesing, Matthew Cohen, Ralph DiPietro, Ward, and Bierman according to the court's docket.

44. No trustee or attorney signed the Order to Docket in the First Stewart Foreclosure. The alleged signature of Geesing is a fabricated signature made, on information and belief, by an employee of Bierman, Geesing, and Ward.

45. The Order to Docket, and every other document and affidavit submitted in support of the Order to Docket, containing the alleged signature of a Trustee, *i.e.*, Bierman, Geesing, or Ward, actually contained a fabricated signature of a Trustee.

46. Notaries employed by BGWW certified some of the fabricated affidavits. Every notary authentication was false in that the notary knew that the affiant did not execute the affidavit and the affiant did not appear before the notary.

47. Upon filing with the court, each such false or fabricated document, the document became a counterfeit document, *i.e.*, a document that was not what it was purported to be, and a fraud upon the court. In the case of a purported affidavit, an instrument is not an affidavit unless it is made from personal knowledge of the facts set

forth therein, and attested to under oath and is signed by the affiant and no one other than the affiant.

48.     Each such document was known by the Trustees to be false, fabricated, or counterfeit when the Trustees submitted the document to the court in support of their foreclosure.

49.     The foreclosure was further supported by a counterfeit document that the trustees represented to the court as a true and accurate copy of the note.

50.     During the foreclosure, Bierman, Geesing, and Ward mailed, or caused to be mailed, numerous documents to Stewart and third parties as required by Maryland statutes and Rules.

51.     Subsequent to 30 September 2009, Stewart discovered the actual nature of the various affidavits.

52.     Having realized that their conduct had been discovered, Bierman, Geesing, and Ward dismissed the First Stewart Foreclosure on or about 7 December 2009.

53.     On or about 2 March 2010, Bierman, Geesing, and Ward docketed a second foreclosure action against the Stewart Property, *Bierman, et al. v. Stewart*, Circuit Court for Montgomery County, case no. 327964V ("**Second Stewart Foreclosure**").

54.     The BGWW attorneys personally involved in the direction, operation, and management of the Second Stewart Foreclosure include Geesing, Ward, DiPietro, Cohen, and Bierman according to the state court's docket summary.

55. The Second Stewart Foreclosure was again "supported" by false, fabricated, and counterfeit documents including yet another adulterated copy of the note with assignments.

56. The Second Stewart Foreclosure was again served by mail.

57. In the Second Stewart Foreclosure, the Trustees again represented to the court that the adulterated copy of the note was a true and accurate copy of the note.

58. During the foreclosure, Bierman, Geesing, and Ward mailed, or caused to be mailed, numerous documents to Stewart and to third parties as required by Maryland statutes and Rules.

59. On 17 June 2010, during a hearing, the Trustees, represented by attorney Cohen, produced the original of the note and assignments. The original note was different from the note that had been previously presented to the court as an attachment to the Order to Docket and misrepresented to the court to be a true and accurate copy of the original note.

60. On 25 June 2010, the Circuit Court for Montgomery County ratified the foreclosure sale of the Stewart Property based on the belated presentation of the actual note to the Court and the representations of Cohen.

61. Subsequent to the ratification of the sale, the Trustees deeded the Stewart Property to a third party.

62. But for the conduct of the Trustees, the ratification of the sale would not have occurred.

63.     Subsequent to the ratification of the sale, the third party obtained legal title and possession of the Stewart Property.

### *Factual Allegations Regarding Jay Nachbar*

64.     Nachbar owned real property known as 9857 Forest View Place, Montgomery Village, Maryland 20886 ("**Nachbar Property**").

65.     Nachbar fell behind on his mortgage payments.

66.     Upon information and belief, FNIS forwarded portions of the documents for the foreclosure of the Nachbar Property to BGWW via both mail and wire.

67.     During the entire foreclosure process, BGWW continued to communicate with FNIS via wire.

68.     On or about 18 June 2009, the alleged note holder for the Nachbar Property, Duetshce Bank National Trust Company as Trustee for the Indy Mac INDX Mortgage Loan Trust 2005 – AR13, mortgage pass-through certificates series 2005 – AR 13, allegedly appointed Bierman, Geesing, and Ward as substitute trustee ("**Nachbar Appointment**") under a deed of trust; however, the purported signature of the Vice President of One West Bank, FSB, Authorized Servicing Agent was not evidenced by an attached Power of Attorney on the Appointment.

69.     Upon information and belief, the "signature" of the Trustee on the Nachbar Appointment is fabricated and is not the actual signature of any attorney including the Trustees

70.     On 4 August 2009, Bierman, Geesing, and Ward docketed a foreclosure against the Nachbar Property, *Bierman, et al. v. Jay Nachbar*, Circuit Court for Montgomery County, case no. 318239 ("**First Nachbar Foreclosure**").

71.     The BGWW attorneys personally involved in the direction, operation, and management of the First Nachbar Foreclosure include Geesing, DiPietro, Ward, and Bierman according to the court's docket.

72.     The Order to Docket and every other document and affidavit containing the alleged signature of a Trustee, *i.e.*, Bierman, Geesing, or Ward, actually contained a fabricated signature of a trustee.

73.     Upon filing each such document, the document became a counterfeit document, *i.e.*, a document that was not what it was purported to be.

74.     Upon information and belief, some of the notary signatures in the First Nachbar Foreclosure were actually fabrications as the signature of the notary was actually executed by someone other than the notary and someone other than the notary affixed the notary's seal.

75.     Each fabricated document was known by the Trustees to be false, fabricated, or counterfeit when the Trustees submitted the fabricated document to the court in support of their foreclosure.

76.     During the foreclosure, Bierman, Geesing, and Ward mailed, or caused to be mailed, numerous documents to Nachbar and third parties as required by Maryland statutes and Rules.

77.     Every false or fabricated document was presented to the court by Bierman, Geesing, and Ward with the knowledge that the documents were not what Bierman, Geesing, and Ward represented the documents to be.

78.     Subsequent to 4 August 2009 Nachbar discovered the nature of the various affidavits.

79.     Having realized that their fabrication had been discovered, Bierman, Geesing, and Ward dismissed the First Nachbar Foreclosure on or about 12 December 2009.

80.     On or about 2 March 2010, Bierman, Geesing, and Ward docketed a second foreclosure action against the Nachbar Property, *Bierman, et al. v. Nachbar*, Circuit Court for Montgomery County, Case no. 327965-V ("**Second Nachbar Foreclosure**").

81.     The BGWW attorneys personally involved in the direction, operation, and management of the Second Nachbar Foreclosure include Geesing, Ward, James B. Travis ("**Travis**") and Bierman according to the court's docket.

82.     During the foreclosure, Bierman, Geesing, and Ward mailed, or caused to be mailed, numerous documents to Nachbar and third parties as required by Maryland statutes and Rules.

83.     As of the date of filing this Complaint, the Second Nachbar Foreclosure remains open and active.

## *Factual Allegations Regarding Gerald A. Lembach and Debbie Lembach*

84.     The Lembachs own real property known as 20 12th Street, Pasadena, Anne Arundel County, Maryland 21122 ("**Lembach Property**").

85.     Lembach fell behind on their mortgage payments.

86.     Upon information and belief, FNIS forwarded portions of the documents for the foreclosure of the Lembach Property to BGWW via both mail and wire.

87.     Upon information and belief, during the entire foreclosure process, BGWW continued to communicate with FNIS via wire.

88.     On or 22 September 2009, the alleged lender for the Lembach Property, Deutsche Bank National Trust Company as Trustee of the Home Equity Mortgage Loan Asset- Backed Trust Series INBS 2007 – B, Home Equity Loan Asset Backed Certificates, Series INABS 2007 – B under the pooling and servicing agreement dated 1 June 2007 allegedly appointed Bierman, Geesing and Ward as substitute trustee ("**Lembach Appointment**") under a deed of trust.

89.     Upon information and belief, the "signature" of the Trustee on the Lembach is fabricated and is not the actual signature of any attorney including the Trustees.

90.     The purported signature of Bierman on the Lembach Appointment, upon information and belief, was not executed by Bierman but was fabricated by an employee of Bierman.

91.     On 28 September 2009, Bierman, Geesing, and Ward docketed a foreclosure against the Lembach Property, *Bierman, et al. v. Lembach et al.,* Circuit Court for Anne Arundel County, case no. 02-C-09-145252 ("**First Lembach Foreclosure**").

92.     The BGWW attorneys personally involved in the direction, operation, and management of the First Lembach Foreclosure include Geesing, Ward, and Bierman according to the court's docket.

93.     During the foreclosure, Bierman, Geesing, and Ward mailed, or caused to be mailed, numerous documents to Lembach and to third parties as required by Maryland statutes and Rules.

94.     The Order to Docket and other papers containing the alleged signature of a trustee, *i.e.,* Bierman, Geesing, or Ward, actually contained fabricated signatures of a trustee.

95.     Each document was known to be false or fabricated by the trustees when they submitted the document to the court in support of the foreclosure.

96.     Subsequent to 28 September 2009, Lembach discovered the nature of the various documents.

97.     Having realized that their fabrication had been discovered, Bierman, Geesing, and Ward dismissed the First Lembach Foreclosure on or about 14 December 2009.

98.     On or about 17 March 2010, Bierman, Geesing, and Ward docketed a second foreclosure action against the Lembach Property, *Bierman, et al. v. Lembach, et ux*, Circuit Court for Anne Arundel County, case no. 02-C-10-150203 ("**Second Lembach Foreclosure**")**.**

99.     The BGWW attorneys personally involved in the direction, operation, and management of the Second Lembach Foreclosure include Geesing, Ward, and Bierman according to the court's docket.

100.    During the foreclosure, Bierman, Geesing, and Ward mailed, or caused to be mailed, numerous documents to Lembach and to third parties as required by Maryland statutes and Rules.

101.    As of the date of filing this Complaint, the Second Lembach Foreclosure remains open and active.

## CLASS ACTION ALLEGATIONS

### *Class and Subclass Definitions*

102.    Proposed Class Definition:  Each Maryland resident who was (1) an owner-occupant of residential real property in the State of Maryland; (2) subject to a foreclosure action docketed by one or more of the Defendants; and (3) during the foreclosure, the trustees supported the foreclosure with one or more false, fabricated, or counterfeit documents.

103.    Proposed MCPA Sub-Class Definition:  Each member of the Class who, within the three years immediately preceding this civil action was (1) an owner-occupant of residential real property in the State of Maryland; (2) subject to a foreclosure action docketed by one or more of the Defendants; and (3) during the foreclosure,

the trustees supported the foreclosure with one or more false, fabricated, or counterfeit documents.

104.    § 7-105.1 Sub-Class Definition:   Each member of the Class who, within the three years immediately preceding this civil action was (1) an owner-occupant of residential real property in the State of Maryland; (2) subject to a foreclosure action docketed by one or more of the Defendants; (3) during the foreclosure, the trustees supported the foreclosure with one or more false, fabricated, or counterfeit documents in violation of Md. Code Ann., Real Prop. § 7-105.1.; and (4) the foreclosure sale of the property was ratified by a Maryland circuit court.

105.    Proposed FDCPA Sub-Class Definition:    Each Maryland consumer who, within the one year immediately preceding this civil action was (1) an owner-occupant of residential real property in the State of Maryland; (2) subject to a foreclosure action docketed by one or more of the Defendants; and (3) during the foreclosure, the trustees supported the foreclosure with one or more false, fabricated, or counterfeit documents, at least one such document being filed in the one year immediately preceding this action.

## *NUMEROSITY*

106.    Upon information and belief, the Plaintiffs estimate that there are no less than 12,500 members of the Class, not less than 10,200 members of the MCPA Sub-

Class, not less than 2,000 members of the § 7-105.1 Sub-Class, and not less than 3,000 members of the FDCPA Sub-Class.

### COMMON QUESTIONS OF LAW AND FACT

107.    The questions of law and fact common to the Plaintiffs, Class, and each Sub-Class include:

107.1.    Whether a trustee or substitute trustee under a deed of trust who dockets a foreclosure against an owner-occupant is a "debt collector" as that term is defined by FDCPA?

107.2.    Whether a trustee or substitute trustee under a deed of trust who dockets a foreclosure against an owner-occupant is a "collector" as that term is defined by MCPA?

107.3.    Whether an affidavit executed by a person other than an affiant has any legal effect?

107.4.    Whether the knowing submission by a trustee to a court of a counterfeit document, *i.e.,* a document that is not what it purports to be, constitutes "unclean hands" ?

107.5.    Whether the fabricated signature of a notary on a document or instrument (*e.g.,* Order to Docket, affidavit, etc.) renders the instrument void or voidable?

107.6.    Whether an instrument appointing a substitute trustee that includes the fabricated signature of one or more of the appointed Substitute Trustees is void?

107.7.    Whether an Order to Docket executed by a person other than an attorney confers any jurisdiction on the court?

107.8.    Whether an Order to Docket executed by a person other than the person indicated confers any jurisdiction on the court?

107.9.    Whether a trustee may proceed with a foreclosure if a Notice of Intention to Foreclose contains false, fabricated, or inaccurate information when that information is mandated by Maryland statutes to be a condition precedent to a foreclosure sale?

107.10.    Whether an affidavit required by Real Prop., § 7-105.1(d)(1)(ii) as a condition precedent to foreclosure that was not executed by the affiant but executed by someone signing the affiant's name is valid and, if not, the effect of the counterfeit affidavit on the trustees legal right to proceed.

107.11.    Whether an affidavit required by Real Prop., § 7-105.1(d)(2)(ii) as a condition precedent to foreclosure that was not executed by the affiant but executed by someone signing the affiant's name is valid and, if not, the effect of the counterfeit affidavit on the trustees legal right to proceed.

107.12.    Whether an affidavit required by Real Prop., § 7-105.1(d)(2)(iii) as a condition precedent to foreclosure that was not executed by the affiant but exe-

cuted by someone signing the affiant's name is valid and, if not, the effect of the coun-
terfeit affidavit on the trustees legal right to proceed.

107.13.    Whether an affidavit required by Real Prop., § 7-105.1(d)(2)(v)
as a condition precedent to foreclosure that was not executed by the affiant but exe-
cuted by someone signing the affiant's name is valid and, if not, the effect of the coun-
terfeit affidavit on the trustees legal right to proceed.

107.14.    Whether service required by Real Prop., § 7-105.1(e) as a con-
dition precedent to foreclosure that includes falseor fabricated, documents that are
conditions precedent to a foreclosure sale is effective as service and, if not, the effect of
the inadequate service on the trustees legal right to proceed.

107.15.    Whether an affidavit required by Real Prop., § 7-105.2(c)(3)(ii)
as a condition precedent to foreclosure that was not executed by the affiant but exe-
cuted by someone signing the affiant's name is valid and, if not, the effect of the coun-
terfeit affidavit on the trustees legal right to proceed.

107.16.    Whether an affidavit required by Real Prop., § 7-105.9(e) as a
condition precedent to foreclosure that was not executed by the affiant but executed by
someone signing the affiant's name is valid and, if not, the effect of the counterfeit affi-
davit on the trustees legal right to proceed.

107.17.    Whether a note provided to the court as a condition precedent
to a foreclosure that the trustees certify as a true and accurate copy of the note but

that is not a true and accurate copy of the note renders the subsequent sale void or voidable.

107.18.   Whether a trustees' deed, i.e., a deed allegedly executed by a trustee to transfer title to real property to the purchaser at a foreclosure sale, that is not executed by any trustee and that contains a false, fabricated, or counterfeit notary authentication, is void or voidable.

108.   The only question of either law or fact not common to the Class is the actual amount of the damages for each member of the Class.

## *TYPICALITY*

109.   The Defendants' conduct in each of the Class members' foreclosure case is not only typical of every Class members' foreclosure, the conduct is identical except in degree, *i.e.,* the number of false, fabricated, or counterfeit documents filed in each foreclosure.

110.   The Plaintiffs and Class members believe that the number of deceptions and untrue representations on the state court per foreclosure action is <u>not</u> a distinction as to any cause of action that would have an effect on the typicality issue.  In other words, for the issue of typicality, the fact that the Defendants filed only three or four false, fabricated,  or counterfeit documents in one foreclosure and six or seven counterfeit documents in another foreclosure is not relevant to liability under any cause of action.

### ADEQUACY OF REPRESENTATION

111.   The Plaintiff and proposed Class are represented by Gerald Solomon and John J. Bascietto of Solomon & Bascietto, LLC, Scott C. Borison, and Michael Gregg Morin.

112.   The Plaintiffs' attorneys, based on their experience and expertise in litigation of the issues in this case, adequately represents the Class.  The Plaintiff's attorneys experience and expertise include, collectively more than 4,000 consumer cases, dozens of mortgage defense cases, foreclosure fraud cases, and class actions including several before this Court.

### PREDOMINANCE AND SUPERIORITY

113.   A class action is superior to any other available method for the fair and efficient adjudication of the controversy because:

113.1.   Common questions of law and facts predominate over any individual questions that may arise.

113.2.   No individual member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

113.3.   Upon information and belief, there are no pending lawsuits concerning this controversy although some issues have been raised as a defense in approximately a half dozen state cases.

113.4.    It is desirable to concentrate the litigation of these claims in this forum since the acts complained of took place in this district and this forum is convenient to the parties, the Class members, the Defendants, and the potential witnesses.

113.5.    The resolution of the claims of all Class members in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation.

113.6.    With potential damages exceeding $100,000,000.00, the liability exceeds the Defendants' assets and all potential insurance proceeds.  Trying the issues raised in various individual cases in federal and state courts would result in an unmanageable situation in which the individual victims would be in a rush to be the first to obtain judgments before all potential payment of damages would be exhausted.

113.7.    Prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendants.

113.8.    The Class and each Sub-Class is specifically identifiable to facilitate provisions of adequate notice and there will be no significant problems managing this case as a class action.  (Each potential member of the Class is readily identifiable by electronic public records, i.e., the Maryland Judiciary Case Search.  Additionally, a review of the dockets available through the Maryland Judiciary Case Search will allow the Plaintiffs' attorneys to confirm each member of each sub-class.)

113.9.    Resolution of the Class members' claims in this single class action is superior to resolution of this controversy through the filing of a host of individual claims — potentially 12,500 individual claims — as a matter of efficiency, consistency, and that it removes economic and other barriers to Class members pursuing their claims.  (It is reasonable to assume that the vast majority of Class members, who have lost their homes through the Defendants' fraud, would not be in a financial position to retain individual attorneys.)

## FIRST CAUSE OF ACTION

## Violation of the Fair Debt Collection Practices Act (FDCPA)

## (15 U.S.C. § 1692, et seq.)

*Plaintiffs and the FDCPA Sub-Class sue Defendants Bierman, Geesing, and Ward and state:*

114.    The Plaintiffs and Class members adopt by reference the allegations contained in all previous paragraphs of this Complaint with the same effect as if herein fully set forth.

115.    Each member of the class is a "consumer" as that term is defined by FDCPA.  15 U.S.C. § 1692a(3).

116.    Each mortgage on real property, that is owner-occupied by a natural person, is a "debt" as that term is defined by FDCPA.  15 U.S.C. § 1692a(5).

117.   Defendants Bierman, Geesing, and Ward are each a "debt collector" as that term is defined by FDCPA.  15 U.S.C. § 1692a(6) and *Wilson v. Draper Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir (2006)).

118.   Defendants Bierman, Geesing, and Ward violated FDCPA (15 U.S.C. § 1692e(5)) by threating to take and actually taking action that they could not take in that they docketed foreclosures with the knowledge that they would improperly support the docketing with false, fabricated,  or counterfeit affidavits, support the sales of consumer homes with false, fabricated,  or counterfeit affidavits, and obtain ratification of sales with false, fabricated,  or counterfeit affidavits.

119.   Every false, fabricated, or counterfeit affidavit filed by Defendants Bierman, Geesing, and Ward in support of the docketing of a foreclosure, the sale of consumers' homes, and the ratification of a foreclosure sale was a false representation or a deceptive means to collect or attempt to collect a consumer debt in violation of FDCPA. 15 U.S.C. § 1692e(10) and § 1692f.

120.   The violations of the FDCPA by Defendants Bierman, Geesing, and Ward were frequent, persistent, consistent, and intentional.

121.   During all dates relevant to this civil action, Defendants Bierman, Geesing, and Ward had the resources to have properly and legally prosecuted every foreclosure; however, they choose to prosecute every foreclosure illegally in order to maximize their profits regardless of the risk to their clients and regardless of the devastating financial and emotional consequences to the thousands of mortgagors and their families.

122.   Each member of the FDCPA Sub-Class has suffered damages as the direct result of the violation of the FDCPA by Defendants Bierman, Geesing, and Ward.

**WHEREFORE**, Each Plaintiff and each member of the FDCPA Sub-Class demand judgment against Howard N. Bierman, George Jacob Geesing, and Carrie M. Ward, jointly and severally, for

[1]   Certify this civil action as a class action with Stewart, Nachbar, and the Lembachs, as the Class representatives and their attorneys; Solomon, Bascietto, Borison, and Morin; as counsel on behalf of the Class;

[2]   Statutory damages of $1,000.00 for each Plaintiff as allowed by 15 U.S.C. § 1692k(a)(2)(B)(i);

[3]   Statutory damages for each member of the FDCPA Sub-Class, other than named Plaintiffs, not to exceed the lessor of $500,000.00 or 1% of the total net worth of Defendants Bierman, Geesing, and Ward as allowed by 15 U.S.C. § 1692k(a)(2)(B)(ii);

[4]   Actual damages for each Plaintiff and each member of the FDCPA Sub-Class (estimated to be not less than $40,000,000.00);

[5]   Attorneys' fees;

[6]   The costs of this civil action; and

[7]   Other relief as the Court may find necessary and appropriate.

## SECOND CAUSE OF ACTION

## Wrongful Foreclosure:  Failure to Comply with

## Maryland Real Property Article, §§ 7-105.1 or 7-105.2

*Plaintiffs and § 7-105.1 Sub-Class sue Defendants Bierman, Geesing and Ward, and state:*

123.    The Plaintiffs and Class members adopt by reference the allegations contained in all previous paragraphs of this Complaint with the same effect as if herein fully set forth.

124.    Md. Code Ann., Real Prop., § 7-105.1(i)[2] states:  "An action for failure to comply with the provisions of this section shall be brought within 3 years after the date of the order ratifying the sale."

125.    Md. Code Ann., Real Prop., § 7-105.2(e) states:  "The right of a record owner to file an action for the failure of the person authorized to make a sale in an action to foreclose a mortgage or deed of trust shall expire 3 years after the date of the order ratifying the foreclosure sale."

126.    Real Prop., §§ 7-105.1 and 7-105.2 mandate that certain notices, documents, statements, and affidavits be provided to mortgagors, homeowners, and third parties during the foreclosure process.  Additionally, Real Prop., §§ 7-105.1 and 7-105.2 mandate that certain of these notices, documents, statements, and affidavits be filed with the court in which the foreclosure is to be filed or has been filed.

---

[2]  Real Prop., § 7-105.1 as it existed from 3 April 2008 through 31 May 2010.

127.   Each requirement of §§ 7-105.1 and 7-105.2 is a statutory condition precedent to docketing a foreclosure, conducting a foreclosure sale, or ratifying a foreclosure sale.

128.   Defendants Bierman, Geesing, and Ward failed to comply with the provisions of Real Prop., §§ 7-105.1 and 7-105.2 in that they knowingly and willfully filed false, fabricated, and counterfeit documents in support of the Order to Docket in every, or virtually every, foreclosure docketed from 4 April 2008 through 31 May 2010.

129.   Each such false, fabricated, or counterfeit affidavit was filed in lieu of an affidavit or statement required as a condition precedent.

130.   Each such false, fabricated, or counterfeit affidavit or statement is, at best, a nullity and, as a condition precedent, renders any foreclosure sale void.

131.   In each foreclosure case, Defendants Bierman, Geesing, and Ward obtained a ratification of the sale by false, fabricated, or counterfeit affidavits in addition to the false, fabricated, or counterfeit affidavits filed with the Order to Docket.

132.   As a direct result of the acts of Bierman, Geesing, and Ward, Maryland courts ratified the foreclosure sale of Stewart's Property and ratified the foreclosure sales of the homes of each member of the § 7-105.1 Sub-Class.

133.   Each member of the § 7-105.1 Sub-Class suffered damages as a direct result of the failure of Defendants Bierman, Geesing, and Ward to comply with the provisions of Real Prop., §§ 7-105.1 and 7-105.2 and their implementing Rules.

**WHEREFORE**, Plaintiffs and each member of the § 7-105.1 Sub-Class demand judgment against Howard N. Bierman, George Jacob Geesing, and Carrie M. Ward, jointly and severally, for:

[1]  Certify this civil action as a class action with Stewart, Nachbar, and the Lembachs, as the Class representatives and their attorneys; Solomon, Bascietto, Borison, and Morin; as counsel on behalf of the Class;

[2]  Actual damages for each Plaintiff and each member of the MCPA Sub-Class (estimated to be not less than $100,000,000.00);

[3]  The costs of this civil action; and

[4]  Other relief as the Court may find necessary and appropriate.

## THIRD CAUSE OF ACTION

### Negligence

*Plaintiffs and the MCPA Sub-Class sue Defendants Bierman, Geesing, and Ward and state:*

134.  The Plaintiffs and Class members adopt by reference the allegations contained in all previous paragraphs of this Complaint with the same effect as if herein fully set forth.

135.  Each Plaintiff and Class member executed a deed of trust as security for a mortgage on their owner-occupied home.

136.   Every trustee named in the initial deeds of trust had both a legal and an equitable fiduciary duty to the relevant Plaintiff or Class member.

137.   Bierman, Geesing, and Ward, individually and collectively, knowingly made the decision to become trustees of substitute trustees with all of the responsibilities and obligation of trustees and substitute trustees.

138.   Bierman, Geesing, and Ward were appointed as trustees or Substitute Trustees by the relevant note holders; however, Bierman, Geesing, and Ward had both a legal and an equitable fiduciary duty to the relevant Plaintiff or Sub-Class member.

139.   Trustees and Substitute Trustees become the agent of the court upon docketing a foreclosure action.

140.   Upon docketing a foreclosure or causing the docketing of a foreclosure, Bierman, Geesing, and Ward had a responsibility to the Plaintiffs and Sub-Class members to comply with Maryland statutes and Maryland Rules pertinent to the foreclosure process.

141.   Among the duties voluntarily assumed by Bierman, Geesing, and Ward were the duties to comply with Real Prop., §§ 7-105.1, 7-105.2 and 7-305 and Maryland Rules, Title 14.

142.   Real Prop., §§ 7-105.1 and 7-105.2 mandate that certain notices, documents, statements, and affidavits be provided to mortgagors, homeowners, and third parties during the foreclosure process.  Additionally, Real Prop., §§ 7-105.1 and 7-105.2

mandate that certain of these notices, documents, statements, and affidavits be filed with the court in which the foreclosure is to be filed or has been filed.

143.    Each requirement of §§ 7-105.1 and 7-105.2 is a statutory condition precedent to docketing a foreclosure, conducting a foreclosure sale, or ratifying a foreclosure sale.

144.    Real Prop., § 7-305 mandates specific post-foreclosure sale procedures as a precondition to any ratification of a foreclosure sale.

145.    Defendants Bierman, Geesing, and Ward failed to comply with the provisions of Real Prop., §§ 7-105.1, 7-105.2, 7-305 and Maryland Rules, Title 14 in every, or virtually every, foreclosure docketed from 4 April 2008 through 31 May 2010.

146.    Each such fabricated, or counterfeit affidavit was filed in lieu of an affidavit, statement, or Report of Sale required by Real Prop., §§ 7-105.1, 7-105.2, 7-305 or Maryland Rules, Title 14.

147.    Each such fabricated, or counterfeit affidavit, statement, or Report of Sale is, at best, a nullity and, as a condition precedent, renders any foreclosure sale void.

148.    Each failure of Bierman, Geesing, or Ward to comply with Real Prop., §§ 7-105.1, 7-105.2, 7-305 and Maryland Rules, Title 14, is negligence *per se.*

149.    Bierman, Geesing, and Ward breached their fiduciary duties to the Plaintiffs, the Class members, and the court each time that they filed a false, fabricated, or counterfeit document in a foreclosure action.

150.    The conduct of Bierman, Geesing, and Ward injured the public interest.

151.    Each Plaintiff and Sub-Class member suffered damages as the direct result of the negligence of Bierman, Geesing, and Ward.

**WHEREFORE**, Each Plaintiff and each member of the MCPA Sub-Class demand judgment against Howard N. Bierman, George Jacob Geesing, and Carrie M. Ward, jointly and severally, for:

[1]    Certify this civil action as a class action with Stewart, Nachbar, and the Lembachs, as the Class representatives and their attorneys; Solomon, Bascietto, Borison, and Morin; as counsel on behalf of the Class;

[2]    Actual damages for each Plaintiff and each member of the MCPA Sub-Class (estimated to be not less than $100,000,000.00);

[3]    The costs of this civil action; and

[4]    Other relief as the Court may find necessary and appropriate.

## FOURTH CAUSE OF ACTION

### Violation of the Maryland Consumer Protection Act (MCPA)

### (MD. CODE ANN., COM. LAW., §§ 13-101, ET SEQ.)

*Plaintiffs and MCPA Sub-Class sue Defendants Bierman, Geesing, and Ward and state:*

152.    The Plaintiffs and Class members adopt by reference the allegations contained in all previous paragraphs of this Complaint with the same effect as if herein fully set forth.

153.    The Plaintiffs and MCPA Sub-Class members are each a consumer as that term is defined by MCPA.

154.    Bierman, Geesing, and Ward are each a debt collector as that term is defined by MCPA.

155.    Maryland requires that trustees attempting to foreclose on real property be natural persons.

156.    Maryland has <u>no</u> requirement that trustees attempting to foreclose on real property be attorneys.

157.    Although Bierman, Geesing, and Ward are attorneys, the conduct complained of in this complaint is in their capacity as trustees rather than the fact that they are also attorneys.

158.    Bierman, Geesing, and Ward, individually and collectively, have made misstatements to the Plaintiffs and MCPA Sub-Class members by providing to the Plaintiffs and MCPA Sub-Class members numerous fabricated, and counterfeit documents with the intent that the Plaintiffs and MCPA Sub-Class members rely on the documents. Such conduct is unfair or deceptive trade practices pursuant to the MCPA.

159.    Bierman, Geesing, and Ward have violated the Maryland Consumer Debt Collection Act ("**MCDCA**") by claiming, attempting, or threatening to enforce rights with the knowledge that the right did not exist.

160.    A violation of MCDCA is a violation of MCPA.

161.    The Plaintiffs and MCPA Sub-Class have each suffered damages, including emotional damages, as the direct result of Bierman, Geesing, and Ward violations of the MCDCA and MCPA.

**WHEREFORE**, Each Plaintiff and each member of the MCPA Sub-Class demand judgment against Howard N. Bierman, George Jacob Geesing and Carrie M. Ward, jointly and severally, for:

[1]    Certify this civil action as a class action with Stewart, Nachbar, and the Lembachs, as the Class representatives and their attorneys; Solomon, Bascietto, Borison, and Morin; as counsel on behalf of the Class;

[2]    Actual damages for each Plaintiff and each member of the MCPA Sub-Class (estimated to be not less than $100,000,000.00);

[3]    Attorney fees;

[4]    The costs of this civil action; and

[5]    Other relief as the Court may find necessary and appropriate.


## FIFTH CAUSE OF ACTION

### Declaratory Judgment

### (Md. Code Ann., Cts. & Jud. Proc., § 3-406)

*Plaintiffs and the Class sue Defendants Bierman, Geesing, Ward and BGWW and state:*

162.   The Plaintiffs and Class members adopt by reference the allegations contained in all previous paragraphs of this Complaint with the same effect as if herein fully set forth.

163.   This is an action for declaratory judgment pursuant to § 3-406 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, for the purpose of determining questions of actual controversy between the parties.

164.   The Defendants insist that their conduct in prosecuting foreclosures against homeowners who are owner-occupants of residential real property is lawful and in compliance with Maryland statutes and Maryland Rules; however, the Plaintiffs and Class members insist that the Defendants' conduct is illegal, in contravention of Maryland statutes, and in contravention of Maryland Rules.

**WHEREFORE**, Plaintiffs and each member of the Class pray that the Court determine the rights of the Plaintiffs and Class members and issue an Order of the Court declaring:

[1]   Certify this civil action as a class action with Stewart, Nachbar, and the Lembachs, as the Class representatives and their attorneys; Solomon, Bascietto, Borison, and Morin; as counsel on behalf of the Class;

[2]   An affidavit executed by any person other than the affiant is a nullity.

[3]   A document or instrument allegedly executed by one person but actually executed by another person and certified by a notary who knows that the

person executing is not the person indicated in the document or instrument, is a fraudulent document or instrument and is void.

[4]     An Order to Docket a foreclosure may be executed only by a trustee or an attorney.

[5]     An Order to Docket executed by other than a trustee or attorney is void and confers no jurisdiction on the court in the case in which the Order to Docket is filed.

[6]     Since 4 April 2008, no foreclosure docketed in Maryland may proceed unless and until each of the documents required by Real Prop., § 7-105.1(d) is filed with the court and served on the mortgagor.

[7]     Since 4 April 2008, no foreclosure sale may proceed unless and until 45 days after each of the documents required by Real Prop., § 7-105.1(d) is filed with the court and served on the mortgagor.

[8]     No affidavit required by Real Prop., § 7-105.1 is valid if such affidavit is not executed by the affiant.  A fabricated or fraudulent affidavit does not meet the requirements of § 7-105.1 and such a document fails as a mandatory condition precedent to a foreclosure sale.

[9]     Since 4 April 2008, no foreclosure docketed in Maryland may proceed unless and until each of the documents required by Real Prop., § 7-105.2(c) have been have been sent as required by § 7-105.2(c) and the trustees have complied with § 7-105.2(c)(3).

[10]    No foreclosure sale may be ratified until and unless the person authorized
        to make the sale complies with Rule 14-305.

[11]    Any affidavit that appears to bear the signature of the affiant but, in fact
        is a fabricated document and, when such a document is filed with a court
        to acquire the jurisdiction of the court, is extrinsic fraud rather than intrin-
        sic fraud.

[12]    A trustees' deed, *i.e.,* a deed purportedly executed by a trustee as grantor
        subsequent to a foreclosure sale and the ratification of the sale by the
        court, actually executed by a person(s) other than a trustee is void *ab ini-*
        *tio* and transfers no interest in real property.

[13]    The costs of this civil action; and

[14]    Such other relief as the Court may find necessary and appropriate.

## SIXTH CAUSE OF ACTION

### Respondeat Superior

*Plaintiffs and the Class sue Defendant BGWW and state:*

165.    The Plaintiffs and Class members adopt by reference the allegations con-
tained in all previous paragraphs of this Complaint with the same effect as if herein fully
set forth.

166.    On all dates relevant to this civil action, Bierman, Geesing, and Ward were
the principals of, employees of, or agents of BGWW.

167.    Bierman, Geesing, and Ward committed the acts and omissions detailed in preceding paragraphs within the scope of their employment or agency.

168.    The Plaintiffs and each member of the Class have suffered damages as the direct result of the acts and omissions of Bierman, Geesing and Ward.

169.    BGWW is jointly and severally liable with Bierman, Geesing and Ward for the acts and omissions of Bierman, Geesing and Ward.

**WHEREFORE**, each Plaintiff and each member of the Class demand judgment against Bierman, Geesing, Ward & Wood, LLC, for all compensatory damages awarded to the Plaintiff and Class members in Counts I through VI, both counts inclusive, of this Complaint and for such other relief as the Court may find necessary and appropriate.

Respectfully Submitted:


By:    */s/ Gerald Solomon*
Gerald Solomon, Esq.
Federal Bar No. 04287
Solomon & Bascietto, LLC
9857 Majestic Drive
Boynton Beach, Florida  33437
Telephone:  800.604.7449
Facsimile:  561.735.3536
E-mail:  jerry@saveyourdream.us

By:    */s/ John J. Bascietto*
John J. Bascietto, Esq.
Federal Bar No. 28289
Solomon & Bascietto, LLC
4741 Sellman Road
Beltsville, Maryland  20705
Telephone:  240.206.6002
Facsimile:  240.2710
E-mail:    johnbaslaw@gmail.com

By:     */s/ Scott C. Borison*
Scott C. Borison, Esq.
Federal Bar No. 22576
5500 Buckeystown Pike
Frederick, Maryland  21703
Telephone:  301.620.1016
Facsimile:  301.620.1018
E-mail:  borison@legglaw.com

By:     */s/ Michael Gregg Morin*
Michael Gregg Morin, Esq.
Federal Bar No. 15399
124 South Street, Suite 3
Annapolis, Maryland  21401
Telephone:  410.280.6133
Facsimile:  410.280.8650
E-mail:  mikemorin.morinlaw@gmail.com