## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

### (GREENBELT DIVISION)

| | |
|---|---|
| **MARJORIE STEWART,** *et al.* | Civil Case Number: |
| Plaintiffs | **10 − 02822 − RWT** |
| *v.* | |
| **HOWARD NORMAN BIERMAN,** *et al.* | *Complaint (Class Action) and* |
| Defendants | *Demand for Jury Trial* |

### FIRST AMENDED COMPLAINT[1]

### (CLASS ACTION)

AND

### DEMAND FOR TRIAL BY JURY

Plaintiffs Marjorie Stewart, Jay Nachbar, and Gerald A. Lembach and his wife Debbie L. Lembach, individually and on behalf of all other Maryland residents similarly situated, by their attorneys; Gerald Solomon and John J. Bascietto of Solomon & Bascietto, LLC, Scott C. Borison, and Michael Gregg Morin; sue Defendants; Howard Norman Bierman, George Jacob Geesing, Carrie Michele Ward, Bierman, Geesing, Ward & Wood, LLC; and state:

---

[1] Pursuant to Rule and the Local Rules, attached hereto as Exhibit 2 to the Motion to File a FAC is a comparison copy of this First Amended Complaint to the Original Complaint.

## INTRODUCTORY STATEMENT AND BACKGROUND

1.  This action, concerning the unprofessional and extra-legal debt collection practices of the Defendants, stems from a set of facts that no reasonable person would have expected, or ever have contemplated, could have occurred just a few years ago. However, having now experienced a Second Great Depression and the largest bailout of America's financial institutions in history, most reasonable people in the State of Maryland would agree that the practices complained of in this action are part and parcel to the national mortgage servicing abuses that have crippled our housing recovery.

2.  Certainly, other courts and authorities are investigating the underlying practices complained of in this amended complaint, but only this Court and a jury of reasonable residents of Maryland can compensate the Named Plaintiffs and putative classes described herein from the material damages sustained by the actions of the Defendants.  These damages include but are not limited to: (i) damage to credit due to the bogus public filings in the state courts by the Defendants which are reported to the major credit bureaus; (ii) additional fees added to the Plaintiffs' mortgage accounts related to the bogus collection practices of the Defendants; (iii) attorney fees to fight the Defendants' illegally filed collection actions in the state courts; and (iv) emotional damages from stress, fear, and other physical manifestations stemming from the bogus debt collection practices of the Defendants.

3.  Maryland Statutes and Rules, which have the effect of law pursuant to Md. Const. art. IV, § 18(a), regulate foreclosure proceedings and process that are initiated

by a Trustee or Substitute Trustee under a Deed of Trust.  For example, Maryland law requires that Trustees file various documents with the Circuit Court in the County where the property is located in order to acquire that Court's jurisdiction over the foreclosure. The documents required to be filed include an order to docket, an appointment of substitute trustees, if applicable, and a number of affidavits for the court's review and consideration in connection with the foreclosure proceeding.  These documents are the minimum requirement for a Maryland court to obtain jurisdiction.

4.  This class action addresses the failure of Substitute Trustees under Deeds of Trust, who are Maryland attorneys, and who are appointed by purported secured parties and not the courts, to meet their obligations under Maryland law.  The Defendants' have had a pattern and practice of filing and supporting thousands of foreclosures by multiple documents that state they are executed by the Defendant(s) but are not documents executed by the Defendant(s) *e.g.*, orders to docket, affidavits, appointments of Substitute Trustees, and trustee deeds.  The forged and falsely executed documents were not signed by other attorneys but were signed by clerks despite Maryland Rules that mandate the signature of an attorney (*see,* Rule 1-311).  The Defendants have consistently represented to this Court and others that the affidavits and papers were factually accurate and therefore were not "false" or "perjurious."  The representation is simply wrong (*e.g.,* the false affidavit regarding the adulterated note in the Second Stewart Foreclosure).  However, every document which states that it is executed by someone who did not in fact execute the documents is factually inaccurate; every nota-

ry attestation that indicates that a person appeared before the notary who did not appear is factually inaccurate; and every notary attestation that indicates that a person made an oath when the person made no oath, is factually inaccurate.

5.   Defendants have also stated to many courts that the documents were executed with the knowledge of the Substitute Trustee and therefore not falsely executed. However, the Defendants fail to address their demand of their non-notary employees that these employees forge the signatures of notaries and use the seals of actual notaries.

6.   The result of the Defendants' conduct was that Defendants, intentionally or negligently, caused tens of thousands of inaccurate documents to be filed as part of foreclosure proceedings before Maryland State courts in order to appear to obtain jurisdiction of the state courts over foreclosure proceedings.

7.   Defendants, who are Officers of the Court, knew or should have known that their conduct did not meet the requirements of Maryland law and that their conduct interfered with the proper administration of foreclosure proceedings. The Defendants submitted these documents to comply with time schedules that they could not meet if they had to review and execute each document that was to be submitted by them. This was done to maximize their profits by filing more foreclosures then their competitor could file by conducting business legally.

8.   In 2008, the Maryland legislature enacted significant and comprehensive changes to statutes, and the Maryland judiciary changed Maryland Rules, governing

foreclosures with the stated intent of affording Maryland consumers and homeowners more protections and notice.  As a compromise to affording homeowners additional protections, the Legislature imposed a number of conditions precedents to a foreclosure, a sale, or a ratification of sale in exchange for allowing Substitute Trustees to file Orders to Docket using affidavits as opposed to requiring production of the underlying documentation, unless challenged.  The Defendants' reaction to these changes was simply to expand their production line of fabricated and counterfeit affidavits and to file more fabricated and counterfeit affidavits in each case.  To produce as many fabricated documents in the shortest possible time, the Defendants required their employees, who were notaries, to authenticate documents that failed to identify the person who had actually executed the documents.  Simply put, the Defendants adopted a "robo-signer" methodology and their law firm staff became "robo-notaries."  When that system failed to produce enough profits for the Defendants, the Defendants required their employees to fabricate notaries' signatures and use notary seals.  The Defendants were so successful in their conduct related to the court filings to initiate the foreclosures that they extended it to the execution of deeds of appointment recorded in the land records—a mandatory prerequisite to obtaining the jurisdiction of Maryland Courts in the foreclosure actions— and trustee deeds filed after ratification of sales.  The Defendants, in their roles as trustees and grantors on post-foreclosure deeds must execute each such deed; trustees have no authority to delicate such acts to non-trustees.  The Defendants

had their "signatures" falsely executed by having their clerical employees sign the Defendants' names without the legal authority to do so.

9.  At some point, the false execution of three or four trustees' signatures on each deed became too cumbersome for the Defendants' desire for greater production and even greater profits.  The Defendants switched to appointments of substitute trustees that would allow the false execution of only one trustees' signature on each trustees' deed.  In doing so, the Defendants created an additional and significant defect to the foreclosure process because each such false execution and false notary attestation of a trustees' deed renders the deed void *ab initio* and is a continuing cloud on the title(s) that flowed from the instrument.  The Plaintiffs estimate that there are substantially more than 6,000 Maryland residents who believe that they hold valid title to their homes; however, their chain of title is, at best, clouded and, most likely, fatally flawed.

## JURISDICTION AND VENUE

9.  Jurisdiction of this Court arises under 15 U.S.C. § 1692 and 28 U.S.C. § 1337.

10.  Supplemental jurisdiction for the State law claims arises under 28 U.S.C. § 1367.

11.  Venue in this District is proper in that the Defendants transact business within the District and the conduct complained of occurred in the District.

**THE PARTIES**

12.     Plaintiff Marjorie Stewart ("**Stewart**") is a natural person who resides in Montgomery Village, Montgomery County, Maryland.

13.     Plaintiff Jay Nachbar ("**Nachbar**") is a natural person who resides in Montgomery Village, Montgomery County, Maryland.

14.     Plaintiffs Gerald A. Lembach and his wife Debbie L. Lembach (collectively, "**Lembach**") are natural persons, husband and wife, and reside in Pasadena, Anne Arundel County, Maryland.Defendant Howard N. Bierman ("**Bierman**") is a natural person who, upon information and belief, resides in Alexandria, Virginia.

15.     Defendant George Jacob Geesing ("**Geesing**") is a natural person who, upon information and belief, resides in Bethesda, Montgomery County, Maryland.

16.     Defendant Carrie Michele Ward ("**Ward**") is a natural person who, upon information and belief, resides in Rockville, Montgomery County, Maryland.

17.     Defendant Bierman, Geesing, Ward & Wood, LLC ("**BGWW**") is a Maryland limited liability company (SDAT No. W04360996) with its principal place of business at Suite 200, 4520 East West Highway, Bethesda, Montgomery County, Maryland.

18.     Currently unnamed as a party but critical to the improper conduct of the Defendants, an entity now known as Lenders Processing Services, Inc. and its affiliated businesses, (collectively "**LPS**"), has its principal place of business in Jacksonville, Florida.

**FACTUAL ALLEGATIONS**

***Factual Allegations Regarding the Defendants***

19.    LPS is a multinational firm with extensive involvement in the American mortgage loan, servicing, and foreclosure process.

19.1.   LPS is not a law firm.

19.2.   Normal business practices for lenders in the LPS network, with intentions to foreclose, are to package the information and documents and forward them to LPS.

19.3.   LPS has established contracts with the foreclosure firms in numerous states including Maryland including BGWW.

19.4.   Once LPS has contracted with a local foreclosure firm, LPS forwards case information via mail and wire.   Throughout the foreclosure process, communication between LPS and the local law firm is via wire and mail.

19.5.   Upon information and belief, LPS requires that all communication between the lender or servicers and the trustees must go through LPS.   Direct communication between the lender or servicer and the trustees foreclosing is rare or nonexistent.   This belief is based upon LPS's representations and related testimony

20.    Upon information and belief, LPS places the vast majority of the current foreclosure work conducted by the Defendants.   This belief is based upon representations made in Maryland courts in sworn affidavits and papers allegedly signed by LPS employees as agents for various purported secured parties authorizing the foreclosure

action.  Additionally, this belief is based upon facts publically disclosed in various courts and in on-going investigations of LPS.

21.    During all periods relevant to this civil action, BGWW was a law firm.

21.1.   From 20 March 1996 through 24 February 2002, BGWW was known as Bierman and Geesing, LLC.

21.2.   From 25 February 2002 through 7 January 2010, BGWW was known as Bierman, Geesing & Ward, LLC.

21.3.   From 8 January 2010 to present, BGWW has been known as Bierman, Geesing, Ward & Wood, LLC.

21.4.   (In this Complaint, the Plaintiffs will use "**BGWW**" for all references to the law firm.)

22.    During all periods relevant to this class action, Bierman, Geesing and Ward were each an attorney admitted to the practice of law in the State of Maryland; however, as alleged herein, Defendants did not act within the scope of their professional license and therefore were not acting as Maryland attorneys entitled to any type of immunity or exemption for their activities as debt collectors.

23.    Bierman, Geesing, and Ward each operated and managed BGWW.

24.    While the level of operation and management of BGWW by Bierman, Geesing, and Ward, varied in degree during the periods relevant to this civil action, the collective operation and management of BGWW by Bierman, Geesing, and/or Ward has been continuous for more than eight years.

25.     During all periods relevant to this civil action, BGWW conducted some legitimate business in addition to the acts complained of in this Complaint.

26.     During all periods relevant to this class action, Bierman, Geesing, and Ward were each a substitute trustee pursuant to Deeds of Appointment of Substitute Trustee, against real property that was an owner-occupied residence, that secured a loan made to Maryland consumer(s).

27.     Upon information and belief, for a number of years, virtually every alleged signature of Bierman, Geesing, and Ward in support of a foreclosure was falsely executed and every notary attestation of the falsely executed signatures was false, forged, or both false and forged.  These beliefs are based upon a review of hundreds of records filed in the state courts during this period of time; upon comparison of the signatures to those preferred by the Defendants in various corrective affidavits filed in the state courts which are nowhere near similar to previously filed documents; and on expert reports comparing the true and authentic signatures of the Defendants to the bogus signatures filed by the Defendants in the various court files.

28.     During all periods relevant to this class action, Bierman, Geesing, and Ward were members of or principals of a law firm, BGWW.

29.     During periods relevant to this class action, Bierman, Geesing Ward each directed, controlled, and operated BGWW and participated in the activities of the BGWW described herein.

30.     During all periods relevant to this class action Bierman, Geesing, Ward docketed foreclosure actions against Maryland consumers who were owner-occupants of the residential properties that were the subject of the foreclosures.

31.     Additionally, the Defendants Bierman, Geesing, and Ward conducted litigation or supervised litigation on behalf of Bierman, Geesing, Ward, and BGWW once the foreclosure became contested.

32.     Throughout the past few years, Bierman, Geesing and Ward directed, operated, and managed the BGWW employees who manufactured fabricated documents by the thousands.

32.1.   The fabricated documents included orders to docket and other documents that have to be submitted under oath and under the penalties of perjury in order for the court to obtain and retain jurisdiction in foreclosure actions.  A small representative sample of the fabricated orders to docket was presented to the Court (*see* Doc. 1-1 which is incorporated by this reference).

32.2.   The Defendants did not execute the documents, including the affidavits.  Geesing has made numerous admissions of this fact to the state courts including those previously presented to the Court (*see* Doc. 1-2) and incorporated by this reference.

32.3.   The Defendants required their employees to fabricate the documents by falsely executing the Defendants' signatures on the documents.

32.4.   The Defendants then required their notaries to certify the deceitful documents by falsely asserting that the Defendants appeared before the notaries, took an oath, and executed their signatures.

32.5.   At some point in time, the Defendants sought to minimize the time and costs required to manufacture counterfeit documents by requiring their employees to forge the signatures of notaries.  Those employees who would not cooperate in the scheme were fired.

32.6.   The Maryland Secretary of State is currently investigating the improper certification and attestation of documents from Maryland law firms.  To date, the Secretary of State has decommissioned at least four notaries employed by BGWW and has refused to re-commission one more.  *See,* Doc. 1-3 previously filed with this Court and incorporated by this reference.

32.7.   Upon information and belief, the Secretary of State's investigation is continuing.

32.8.   The five BGWW notaries decommissioned to date by the Secretary of State are the proverbial tip of the iceberg.  Additional notaries and employees of BGWW who were, upon information and belief, actively involved in the manufacture of fabricated documents include David A. Edlavitch (*see,* Doc. 1-4 previously filed with this Court and incorporated by this reference), Anne M. Herrera (*see,* Doc. 1-5 previously filed with this Court and incorporated by this reference ), Annette M. Donovan (*see,* Doc. 1-6 previously filed with this Court and incorporated by this reference), Maurice T.

Sams (*see,* Doc. 1-7 previously filed with this Court and incorporated by this reference),

Joyce M. White (*see,* Doc. 1-8 previously filed with this Court and incorporated by this

reference), Janice M. Hill (*see,* Doc. 1-9 previously filed with this Court and incorporated

by this reference), Derrick L. Long (*see* Doc. 1-10 previously filed with this Court and

incorporated by this reference), Rachel Bayard (*see,* Doc. 1-11 previously filed with this

Court and incorporated by this reference), and Michelle J. Simon (*see,* Doc. 1-12 previ-

ously filed with this Court and incorporated by this reference).

33.    Throughout the past few years, Bierman, Geesing, and Ward directed, op-

erated, and managed the BGWW employees who manufactured fraudulent, falsely exe-

cuted, and falsely authenticated trustee deeds by the thousands.

33.1.   As <u>trustees and as grantors of trustee deeds</u>, it is the responsibility

and obligation of Bierman, Geesing, and Ward to personally execute trustees' deeds af-

ter the successful ratification of a foreclosure sale.

33.2.   There is no legal authority or basis for a trustee to delegate the re-

sponsibility of executing trustees' deeds to any person other than a trustee.

33.3.   From 2004 to November 2009, Bierman, Geesing, and Ward have

compelled their clerical employees to falsely execute the signatures of Bierman, Gees-

ing, Ward, and others on trustee deeds.

33.4.   Plaintiffs have attached random examples of such copies of record-

ed falsely executed trustee deeds for years 2004 (*see,* Doc. 1-13 previously filed with

this Court and incorporated by this reference), 2005 (*see,* Doc. 1-14 previously filed

with this Court and incorporated by this reference), 2006 (*see,* Doc. 1-15 previously filed with this Court and incorporated by this reference ), 2007 (*see,* Doc. 16-1 previously filed with this Court and incorporated by this reference ), 2008 (*see,* Doc. 1-17 previously filed with this Court and incorporated by this reference ), 2009 (*see,* Doc. 1-18 previously filed with this Court and incorporated by this reference ), and 2010 (*see,* Doc. 1-19 previously filed with this Court and incorporated by this reference ).

33.5.   At some point, the fabrication of three or four trustee's signatures on each trustees' deed became too cumbersome and too unfavorable to BGWW's profits.  The Defendants resorted to the simplification of including in the appointment instruments the provision that any one of the trustees could execute documents and bind all trustees.  After the change in the appointment instruments, the Defendants were only required to have one trustees' signature falsely executed for each deed.

33.6.   Each of the extract examples provided in Plaintiffs' Exhibit Nos. 13 - 19 to the Complaint (Docs. 1-13 through 1-19) contains the certification of a notary.  Every such certification was false and was known to the notary to be false when the notary executed the certification.  In each case, the Trustee(s) did not appear, did not take an oath, did not make any representations, and did not execute any signatures.

33.7.   Bierman, Geesing, and Ward each knew the falsity of each falsely executed and forged notary signature.

33.8.   Bierman, Geesing, and Ward each knew that each of the trustees' deeds would be recorded in the land records of the relevant county.

33.9.   Every fraudulent trustees' deeds was recorded or caused to be recorded by Bierman, Geesing, or Ward.

33.10.    Each such trustees' deed, as a counterfeit document, is void and transferred no interest in real property.

34.    The Defendants knew when they recorded, or caused to be record, the counterfeit trustees' deeds that the vast majority of all property referenced by the counterfeit deeds would be purchased by consumers for personal use and that the purchases would be funded by mortgages.

35.    Bierman, Geesing, and Ward knew that the lending institutions providing mortgages, the general public, and Plaintiffs would rely on the apparent validity of the trustee deeds.

36.    There was no reasonable possibility that any of the parties affected by these actions could have known of the defects in the affidavits, papers, deeds, and other documents which claimed to have been executed by the Defendants.   Maryland courts and the clerks of the courts had not discovered the fraudulent nature of thousands of these documents despite daily review of such documents.   The Plaintiffs discovered the nature of the documents in October – November 2009.   The courts, clerks of the courts, and general public started to become aware in October 2010 after public disclosure were made in the media and by the Maryland Court of Appeals in the Fall of 2010 when this action was initiated.

37.     The Named Plaintiffs and Plaintiffs' Class had no reason to know — no reason to suspect — the true illegal nature of the illegal acts of the Defendants and Defendant Class concerning the responses to their mortgage loan modification requests since the Defendants routinely omit or misrepresent certain information from the Plaintiffs' Class concerning the bogus nature of how the Defendants acquired the jurisdiction of the Maryland courts in hundreds of foreclosure actions during the class period.

38.     This case is one of those rare instances where circumstances external to the conduct of the Named Plaintiffs and Plaintiffs' Class which warrant a finding that it would be unconscionable to enforce the various federal and state limitations periods against the Plaintiffs' Class since such an act would create a gross injustice of allowing the Defendants to be wrongfully and unjustly enriched to the detriment of the Plaintiffs' Class in a total sum of millions of dollars.  Of course, each of these dollars was passed on to the victims as the costs of the improper foreclosures.  The victims have paid BGWW to be the victims of BGWW.

39.     As each counterfeit trustee's deed is void *ab initio*, title for each property remains in the name of the last person in title prior to the execution and recordation of the counterfeit instrument.

40.     Each such counterfeit deed remains a cloud on title.

41.     In late fall 2009, some Maryland attorneys discovered the Defendants' fraud on Maryland courts and on thousands of Maryland consumers.  Subsequent to

discovery, and the initiation of State agency investigations, the Defendants assert that they have changed their procedures to comply with Maryland law and court Rules.  Any assertion that such corrective acts were voluntary or that that the initial bogus documents were thought to be authorized and permitted under Maryland law are, <u>at best</u>, disingenuous.

### *Factual Allegations Regarding Marjorie Stewart*

42.    Stewart owned real property known as 19032 Canadian Court, Montgomery Village, Montgomery County, Maryland 20886 ("**Stewart Property**").

43.    Stewart fell behind on her mortgage payments.

44.    Upon information and belief, LPS forwarded portions of the documents for the foreclosure of the Stewart Property to BGWW via both mail and wire.

45.    Upon information and belief, during the entire foreclosure process, BGWW continued to communicate with LPS via wire.

46.    On or about 21 September 2009, the alleged note holder lender for the Stewart Property, OneWest Bank, FSB, allegedly appointed Bierman, Geesing, and Ward as substitute trustee ("**Stewart Appointment**") under a deed of trust; however, the purported signature of Bierman on the Appointment, upon information and belief, was not executed by Bierman but was falsely executed by an employee of Bierman and/or BGWW.

47.    Upon information and belief, the "signature" of the Trustee on the Stewart Appointment is falsely executed and is not the actual signature of any attorney including the Trustees.  This belief is based upon a comparison of Bierman's actual "current" signature presented to various Maryland courts under show cause orders related to the robo-signing practices of BGWW.

48.    On 30 September 2009, Bierman, Geesing, and Ward docketed a foreclosure against the Stewart Property, *Bierman, et al. v. Stewart*, Circuit Court for Montgomery County, case no. 321204V ("**First Stewart Foreclosure**").

49.    The falsely executed Order to Docket, with the falsely executed affidavits attached, was served on or about 16 October 2009, a date less than one-year immediately preceding the filing of this civil action.

50.    In support of the First Stewart Foreclosure, and in order to acquire the jurisdiction to commence the action, Bierman, Geesing, and Ward based the action upon a purported signature of a BGWW attorney on an affidavit or declaration (*i.e.*, testimony) but that list each of the BGWW attorneys/substitute trustees as the affiant; however, each document contains only one scribble as a indecipherable signature.

51.    This practice of multiple "potential affiants" has been condemned by Judge John W. Debelius, Administrative Judge for the Circuit Court for Montgomery County; by Judge Diane O. Leasure, Administrative Judge for the Fifth Judicial Circuit and Circuit Court for Howard County; and by judges in the Circuit Courts for Baltimore City and Anne Arundel County.

52.     In *Geesing v. Willson* (Circuit Court for Howard County, Case No. 13-C-10-082594), Judge Leasure found such affidavits to be improper regardless of whether actually signed by one of the alleged affiants.   Judge Leasure found that the only appropriate response was dismissal of the foreclosure.   These improper forms and affidavits filed by the Defendants included, but not limited to, an Affidavit of Mailing of Notice to Occupant(s).   The final decision in *Geesing v. Wilson* was not appealed and the time allowed for appeal long ago expired.

53.     In accord with the final ruling of Judge Leasure in *Geesing v. Willson*, each of the three first foreclosures against the homes of the named Plaintiff was improper and not in conformance with Maryland law.

54.     The BGWW attorneys personally involved in the direction, operation, and management of the First Stewart Foreclosure include Bierman, Geesing, Ward, and two other BGWW attorneys, Matthew Cohen and Ralph J. DiPietro according to the State court's docket.

55.     No trustee or attorney signed the Order to Docket in the First Stewart Foreclosure.  The alleged signature of Geesing is a falsely executed signature made, on information and belief, by an employee of Bierman, Geesing, and Ward — an employee who was not an attorney.   This belief is based upon a comparison of Geesing's actual signature presented to various Maryland courts under show cause orders related to the robo-signing practices of BGWW.

56.     The Order to Docket, and every other document and affidavit submitted in support of the Order to Docket, containing the alleged signature of a Trustee, *i.e.*, Bierman, Geesing, or Ward, actually contained a falsely executed signature of a Trustee.

57.     Notaries employed by BGWW certified some of the falsely executed affidavits.  Every notary authentication was false in that the notary knew that the affiant did not execute the affidavit, the affiant did not take any oath, and the affiant did not appear before the notary.

58.     Upon filing with the court, each such false or falsely executed document, the document became a counterfeit document, *i.e.*, a document that was not what it was purported to be, and a fraud upon the court.

59.     In the case of a purported affidavit, an instrument is not an affidavit unless it is made from personal knowledge of the facts set forth therein, attested to under oath, and is signed by the affiant and no one other than the affiant.

60.     Each such document was known by the Trustees to be false, fabricated, or counterfeit when the Trustees submitted the document to the court in support of their foreclosure.

61.     The foreclosure was further supported by a document that the trustees represented to the court as a true and accurate copy of the note.

62.     During the foreclosure, Bierman, Geesing, and Ward mailed, or caused to be mailed, numerous documents to Stewart and third parties as required by Maryland law.

63.     Stewart retained attorneys and incurred legal fees to represent Stewart in the bogus First Stewart Foreclosure action.   That action is now a part of the public records, is reported on Stewart's credit reports, and continues to negatively impact her credit score.   Stewart discovered the actual nature of the various affidavits after having retained counsel to defend against the bogus action and her counsel had conducted an investigation on her behalf.

64.     Having realized that their conduct had been discovered, Bierman, Geesing, and Ward dismissed the First Stewart Foreclosure on or about 7 December 2009. However, the First Stewart Foreclosure action remains a part of the public records and continues to negatively impact Stewart's credit scores reported by the major credit bureaus.

65.     On or about 2 March 2010, Bierman, Geesing, and Ward docketed a second foreclosure action against the Stewart Property, *Bierman, et al. v. Stewart*, Circuit Court for Montgomery County, case no. 327964V ("**Second Stewart Foreclosure**").

66.     Every document filed by Bierman, Geesing, and Ward in the Second Stewart Foreclosure was filed within the one-year immediately preceding the filing of this civil action.

67.      In support of the Second Stewart Foreclosure, and in order to acquire the jurisdiction to commence the action, Bierman, Geesing, and Ward based the action upon falsely executed and improper signatures of an alleged BGWW attorney on affidavits or declarations (*i.e.*, testimony).   These documents list each of the BGWW attorneys/substitute trustees as a potential affiant but the document contains only a single

indecipherable signature.  This practice is the same practice rejected by circuit court Judges Debelius, Leasure, and others.

68.     These improper forms and affidavits filed by the Defendants included but are not limited to:  Affidavit, Pursuant to Rule 14-207(b)(4) Regarding Copy of Deed of Appointment of Substitute Trustee, Affidavit, Pursuant to MD Rule 14-207(b)(1) Regarding Copy of Lien Instrument, Affidavit of Deed of Trust Debt and Right to Foreclose, Affidavit Pursuant to Service Members Civil Relief Act, and Affidavit of Mailing of Notice to Occupant(s).

69.     In accord with the final ruling of Judge Leasure in *Geesing v. Willson*, the Second Stewart Foreclosure action was improper and not in conformance with Maryland law.

70.     The BGWW attorneys personally involved in the direction, operation, and management of the fraudulent Second Stewart Foreclosure include Geesing, Ward, Ralph DiPietro, Matthew Cohen, and Bierman according to the state court's docket summary.

71.     The Second Stewart Foreclosure was again "supported" by false, fabricated, and counterfeit documents including an adulterated copy of the note with assignments.

72.     Every paper filed in the Second Stewart Foreclosure was filed within the one year immediately preceding the filing of this civil action.

73.    Additionally, the Second Stewart Foreclosure was supported by a false affidavit indicating that the adulterated copy of the note was a true and accurate copy of the actual note.  Bierman, Geesing, and Ward were aware that the affidavit was false as they had previously filed an affidavit in the First Stewart Foreclosure that asserted that a different copy of the note was true and accurate.  The copy of the note, and the affidavit attesting to the authenticity of the note, were verified as false on 17 June 2010 at a hearing during which the Trustees produced the actual note.

74.    The Second Stewart Foreclosure was served on Stewart.

75.    Stewart retained attorneys to represent her in the Second Stewart Foreclosure and incurred attorney fees as a result.

76.    In the Second Stewart Foreclosure, the Trustees again represented to the court that the adulterated copy of the note was a true and accurate copy of the note.

77.    During the foreclosure, Bierman, Geesing, and Ward mailed, or caused to be mailed, numerous documents to Stewart and to third parties as required by Maryland law.

78.    On 17 June 2010, during a hearing, the Trustees, represented by attorney Cohen, belatedly produced the original of the note and assignments.  The original note was different from the note that had been previously presented to the court as an attachment to the Order to Docket in the Second Stewart Foreclosure and misrepresented to the court, by a false affidavit — factually false affidavit — to be a true and accurate copy of the original note.  Cohen offered no explanation for the factually false affidavit.  On 25 June 2010, the Circuit Court for Montgomery County ratified the foreclosure sale

of the Stewart Property based on the belated presentation of the actual note to the Court and the representations of Cohen.

79.     The Circuit Court for Montgomery County found that regardless of the fraudulent note previously submitted to the Court, the Defendants had presented a valid original note during the June 2010 hearing and the sale could then proceed.  The Circuit Court for Montgomery County did not rule whatsoever on any fact or issue concerning the debt collection practices and procedures of the Defendants and whether or not those practices and procedures caused any damages.

80.     Subsequent to the ratification of the sale, the Trustees deeded the Stewart Property to a third party.

81.     But for the conduct of the Trustees, the sale and the ratification of the sale would not have occurred.

82.     Subsequent to the ratification of the sale, the third party obtained title and possession of the Stewart Property.

83.     Ms. Stewart has been damaged by the Defendants' direct and indirect actions, described herein, through the improper commencement and prosecution of the foreclosure action, *i.e.*, the First Stewart Foreclosure Action, against her that has damaged their credit, cost her legal fees and expenses to defend the bogus action, and caused emotional damages due to stress and other physical manifestations.   Upon information and belief, the Defendants and their privies have also charged Ms. Stewart's account with fees and charges related to the illegal and bogus foreclosure actions filed

against her.

### *Factual Allegations Regarding Jay Nachbar*

84.     Nachbar owned real property known as 9958 Forestview Place, Montgomery Village, Maryland 20886 ("**Nachbar Property**")**.**

85.     Nachbar fell behind on his mortgage payments.

86.     Upon information and belief, LPS forwarded portions of the documents for the foreclosure of the Nachbar Property to BGWW via both mail and wire.

87.     During the entire foreclosure process, BGWW continued to communicate with LPS via wire.

88.     On or about 18 June 2009, the alleged note holder for the Nachbar Property, Duetshce Bank National Trust Company as Trustee for the Indy Mac INDX Mortgage Loan Trust 2005 − AR13, mortgage pass-through certificates series 2005 − AR 13, allegedly appointed Bierman, Geesing, and Ward as substitute trustee ("**Nachbar Appointment**") under a deed of trust; however, the purported signature of the Vice President of One West Bank, FSB, Authorized Servicing Agent was not evidenced by an attached Power of Attorney on the Appointment.

89.     Upon information and belief, the "signature" of the Trustee on the Nachbar Appointment is falsely executed and is not the actual signature of any attorney including the Trustees.  This belief is based upon a review of hundreds of affidavits, papers, and other documents since November 2010 signed by the Defendants in the state

courts that do not remotely match the alleged Trustee signature on the Nachbar Appointment.

90.     On 4 August 2009, Bierman, Geesing, and Ward docketed a foreclosure against the Nachbar Property, *Bierman, et al. v. Jay Nachbar*, Circuit Court for Montgomery County, case no. 318239 ("**First Nachbar Foreclosure**").

91.     The BGWW attorneys personally involved in the direction, operation, and management of the First Nachbar Foreclosure include Geesing, Ward, and Bierman according to the court's docket.

92.     The Order to Docket and every other document and affidavit containing the alleged signature of a Trustee, *i.e.*, Bierman, Geesing, or Ward, actually contained a falsely executed signature of a trustee.  This belief is based upon a review of hundreds of affidavits, papers, and other documents signed by the Defendants in the state courts that do not even closely match the signatures on the documents and papers used to acquire the jurisdiction of the state court in the First Nachbar Foreclosure.

93.     Upon filing each such document, the document became a counterfeit document, *i.e.*, a document that was not what it was purported to be.

94.     Upon information and belief, some of the notary signatures in the First Nachbar Foreclosure were actually fabrications as the signature of the notary was actually executed by someone other than the notary and someone other than the notary affixed the notary's seal.  This belief is based upon a review of hundreds of affidavits

since November 2010, papers, and other documents filed by the Defendants in the state courts that contain multiple purported signatures of the same notary.

95.     Each falsely executed document was known by the Trustees to be false, fabricated, or counterfeit when the Trustees submitted the falsely executed document to the court in support of their foreclosure.

96.     In support of the First Nachbar Foreclosure and in order to acquire the jurisdiction to commence the action, Bierman, Geesing, and Ward based the action upon falsely executed signature of a purported BGWW attorney on affidavits or declarations (*i.e.*, testimony) that list each of the BGWW attorneys/substitute trustees as the affiant but contain only a single (false) signature.  This practice is the same practice rejected by circuit court Judges Debelius, Leasure, and others.

97.     These improper forms and affidavits filed by the Defendants included but is not limited to Affidavit of Mailing of Notice to Occupant(s).

98.     In accord with the final ruling of Judge Leasure in *Geesing v. Willson*, the Second Lembach Foreclosure was improper and not in conformance with Maryland law.

99.     During the foreclosure, Bierman, Geesing, and Ward mailed, or caused to be mailed, numerous documents to Nachbar and third parties as required by Maryland law.

100.     Every false or falsely executed document was presented to the court by Bierman, Geesing, and Ward with the knowledge that the documents were not what Bierman, Geesing, and Ward represented the documents to be.

101.    Nachbar retained attorneys and incurred legal fees to represent him in the First Nachbar Foreclosure.

102.    Nachbar discovered the nature of the various affidavits after he retained counsel in November 2009 and his counsel conducted an independent investigation.

103.    Having realized that their fraud on Nachbar and the court had been discovered, Bierman, Geesing, and Ward dismissed the First Nachbar Foreclosure on or about 12 December 2009.

104.    On or about 2 March 2010, Bierman, Geesing, and Ward docketed a second foreclosure action against the Nachbar Property, *Bierman, et al. v. Nachbar*, Circuit Court for Montgomery County, Case no. 327965-V ("**Second Nachbar Foreclosure**").

105.    The Second Nachbar Foreclosure was filed within the one-year immediately preceding the filing of this civil action.

106.    Nachbar retained attorneys and incurred legal fees to represent him in the Second Nachbar Foreclosure.

107.    The BGWW attorneys personally involved in the direction, operation, and management of the Second Nachbar Foreclosure include Geesing, Ward, James B. Travis ("**Travis**"), and Bierman according to the court's docket.

108.    In support of the Second Nachbar Foreclosure and in order to acquire the jurisdiction of the court, Bierman, Geesing, and Ward based the action upon a falsely executed and improper signature of a BGWW attorney on a affidavit or declaration (*i.e.*,

testimony) but list each of the BGWW attorneys/substitute trustees as the affiant but contain only a single indecipherable signature.  This practice is the same practice rejected by circuit court Judges Debelius, Leasure, and others.

109.    These improper forms and affidavits filed by the Defendants included but are not limited to: Affidavit, Pursuant to Rule 14-207(b)(4) Regarding Copy of Deed of Appointment of Substitute Trustee, Affidavit, Pursuant to MD Rule 14-207(b)(1) Regarding Copy of Lien Instrument, Affidavit of Deed of Trust Debt and Right to Foreclose, Affidavit Pursuant to Service Members Civil Relief Act, and Affidavit of Mailing of Notice to Occupant(s).

110.    In accord with the final ruling of Judge Leasure in *Geesing v. Willson*, the Second Nachbar Foreclosure was improper and not in conformance with Maryland law.

111.    During the foreclosure, Bierman, Geesing, and Ward mailed, or caused to be mailed, numerous documents to Nachbar and third parties as required by Maryland law.

112.    As of the date of filing this First Amended Complaint ("**FAC**"), the Second Nachbar Foreclosure remains open and active.

113.    The active foreclosure action and threat of foreclosure remains a continuing harm to Nachbar and a continuing damage to Nachbar's credit ratings that effect Nachbar's employment potential and ability to obtain any credit, including credit to refinance his mortgage.

114.    Nachbar has also been damaged by the Defendants' direct and indirect actions, described herein, through the improper commencement and prosecution of the

foreclosure actions against him.  These actions have damaged his credit, cost him legal fees and expenses to defend the bogus action, and caused emotional damages due to stress and other physical manifestations.  Upon information and belief, the Defendants and their privies have also charged Nachbar's account with fees and charges related to the illegal and bogus foreclosure action filed against him.

### *Factual Allegations Regarding Gerald A. Lembach and Debbie Lembach*

115.   The Lembachs own real property known as 20 12th Street, Pasadena, Anne Arundel County, Maryland 21122 ("**Lembach Property**").

116.   The Lembachs fell behind on their mortgage payments.

117.   Upon information and belief, LPS forwarded portions of the documents for the foreclosure of the Lembach Property to BGWW via both mail and wire.

118.   Upon information and belief, during the entire foreclosure process, BGWW continued to communicate with LPS via wire.

119.   On or 22 September 2009, the alleged lender for the Lembach Property, Deutsche Bank National Trust Company as Trustee of the Home Equity Mortgage Loan Asset-Backed Trust Series INBS 2007–B, under the pooling and servicing agreement dated 1 June 2007, allegedly appointed Bierman, Geesing and Ward as substitute trustee ("**Lembach Appointment**") under a deed of trust.

120.    Upon information and belief, the "signature" of the Trustee on the Lembach Appointment is falsely executed and is not the actual signature of any attorney including the Trustees.

121.    The purported signature of Bierman on the Lembach Appointment, upon information and belief, was not executed by Bierman but was falsely executed by an employee of Bierman.

122.    On 28 September 2009, Bierman, Geesing, and Ward docketed a foreclosure against the Lembach Property, *Bierman, et al. v. Lembach et al.,* Circuit Court for Anne Arundel County, case no. 02-C-09-145252 ("**First Lembach Foreclosure**").

123.    On 14 October 2009, within one-year immediately preceding the filing of this action, the Defendants filed two falsely executed affidavits of military service in the First Lembach Foreclosure.  *See,* docket entry nos. 9/0 and 10/0, Plaintiff's Exhibit No. 24 (Doc. 14-6).

124.    In support of the First Lembach Foreclosure and in order to fraudulently acquire the jurisdiction of the State court, Bierman, Geesing, and Ward based the action upon falsely executed signatures of a BGWW attorney on affidavits or declarations (*i.e.,* testimony).  Each such document list multiple individuals as potential affiants; however, each such documents contains only one scribble as the signature of an unidentified affiant.  This practice is the same practice rejected by circuit court Judges Debelius, Leasure, and others.

125.     In accord with the final ruling of Judge Leasure in *Geesing v. Willson*, the First Lembach Foreclosure was improper and not in conformance with Maryland law.

126.     The falsely executed affidavit identified in the above paragraph were filed in the First Lembach Foreclosure within the one-year immediately preceding this filing of this civil action.

127.     The BGWW attorneys personally involved in the direction, operation, and management of the First Lembach Foreclosure include Bierman, Geesing, and Ward according to the court's docket.

128.     During the foreclosure, Bierman, Geesing, and Ward mailed, or caused to be mailed, numerous documents to Lembach and to third parties as required by Maryland law.

129.     The Order to Docket and other papers containing the alleged signature of a trustee, *i.e.,* Bierman, Geesing, or Ward, actually contained falsely executed signatures of a BGWW non-attorney employee.

130.     Each document was known to be false or fabricated by the trustees when they submitted the document to the court in support of the foreclosure.

131.     The Lembachs retained attorneys and incurred legal fees to represent the Lembachs in the bogus First Lembach Foreclosure.

132.     The Lembachs discovered the fraudulent nature of the various documents.

133.     Having realized that their fraudulent conduct had been discovered, Bierman, Geesing, and Ward dismissed the First Lembach Foreclosure on or about 14 December 2009.

134.    On or about 17 March 2010, Bierman, Geesing, and Ward docketed a se-
cond foreclosure action against the Lembach Property, *Bierman, et al. v. Lembach, et
ux*, Circuit Court for Anne Arundel County, case no. 02-C-10-150203[PU2] ("**Second
Lembach Foreclosure**").

135.    In support of the Second Lembach Foreclosure and in order to fraudulent-
ly acquire the jurisdiction of the State court, Bierman, Geesing, and Ward based the action
upon purported and improper signatures of a purported BGWW attorney on affidavits or
declarations (*i.e.,* testimony).  Each such document list multiple individuals as potential
affiants; however, each such documents contains only one scribble as the signature of
an unidentified affiant.  This practice is the same practice rejected by circuit court Judg-
es Debelius, Leasure, and others.

136.    These improper forms and affidavits filed by the Defendants included but
is not limited to: Affidavit, Pursuant to Rule 14-207(b)(4) Regarding Copy of Deed of
Appointment of Substitute Trustee, Affidavit, Pursuant to MD Rule 14-207(b)(1) Regard-
ing Copy of Lien Instrument, Affidavit of Deed of Trust Debt and Right to Foreclose, Af-
fidavit Pursuant to Service Members Civil Relief Act, and Affidavit of Mailing of Notice to
Occupant(s).

137.    In accord with the final ruling of Judge Leasure in *Geesing v. Willson*, the Se-
cond Lembach Foreclosure was improper and not in conformance with Maryland law.

138.    The BGWW attorneys personally involved in the direction, operation, and management of the Second Lembach Foreclosure include Bierman, Geesing, and Ward according to the court's docket.

139.    During the foreclosure, Bierman, Geesing, and Ward mailed, or caused to be mailed, numerous documents to Lembach and to third parties as required by Maryland law.

140.    The Second Lembach Foreclosure was dismissed by the state court but remains part of the public records and is negatively reported on the Lembach's credit reports as such.

141.    The Lembach's have been damaged by the Defendants' direct and indirect actions, described herein, through the improper commencement and prosecution of the foreclosure actions, *i.e.* the First Lembach Foreclosure and the Second Lembach Foreclosure, against them that has damaged their credit, cost them legal fees and expenses to defend against the bogus actions, and caused emotional damages due to stress and other physical manifestations. Upon information and belief, the Defendants and their privies have also charged the Lembach's account with fees and charges related to the illegal and bogus foreclosure action filed against him.

## CLASS ACTION ALLEGATIONS

### *Class and Subclass Definitions*

142.    <u>Proposed Class Definition</u>:  Each Maryland resident who was (1) an own-er-occupant of residential real property in the State of Maryland; (2) subject to a fore-

closure action docketed by one or more of the Defendants; and (3) during the foreclo-

sure, the trustees supported the foreclosure with one or more bogus, false, fabricated,

or counterfeit document(s).

143.   <u>Proposed FDCPA/MCPA/MCDCA Sub-Class Definition</u>:  Each member of the

Class who, within the three years immediately preceding this civil action was (1) an

owner-occupant of residential real property in the State of Maryland; (2) subject to a

foreclosure action docketed by one or more of the Defendants; and (3) during the fore-

closure, the trustees supported the foreclosure with one or more bogus, false, fabricat-

ed, or counterfeit documents.

144.   <u>Proposed § 7-105.1 Sub-Class Definition</u>:  Each member of the Class who,

from 13 October 2007 to present was (1) an owner-occupant of residential real proper-

ty in the State of Maryland; (2) subject to a foreclosure action docketed by one or more

of the Defendants; (3) during the foreclosure, the trustees supported the foreclosure

with one or more bogus, false, fabricated, or counterfeit documents in violation of Md.

Code Ann., Real Prop. § 7-105.1.; and (4) the foreclosure sale of the property was rati-

fied by a Maryland circuit court.


### NUMEROSITY

145.   Upon information and belief, the Plaintiffs estimate that there are no less

than 12,500 members of the Class, not less than 10,200 members of the MCPA/MCDCA

Sub-Class, not less than 2,000 members of the § 7-105.1 Sub-Class, and not less than 3,000 members of the FDCPA Sub-Class.

## COMMON QUESTIONS OF LAW AND FACT

146.    The questions of law and fact common to the Plaintiffs, Class, and each Sub-Class include:

146.1.    Whether a trustee or substitute trustee under a deed of trust who dockets a foreclosure against an owner-occupant is a "debt collector" as that term is defined by FDCPA?

146.2.    Whether a trustee or substitute trustee under a deed of trust who dockets a foreclosure against an owner-occupant is a "collector" as that term is defined by MCPA/MCDCA?

146.3.    Whether an affidavit executed by a person other than an affiant has any legal effect?

146.4.    Whether the doctrine of offensive non-mutual collateral estoppels applies to this case and this Court is bound to accept the legal and factual findings of the Circuit Court for Howard County in the matter known as *Geesing v. Willson* (Circuit Court for Howard County, Case No. 13-C-10-082594) that knowing submission by a trustee to a court of a counterfeit document, *i.e.,* a document that is not what it purports to be, constitutes "unclean hands"?

146.5.     Whether the falsely executed signature of a notary on a document or instrument (*e.g.,* Order to Docket, affidavit, etc.) renders the instrument void or voidable?

146.6.     Whether an instrument appointing a substitute trustee that includes the falsely executed signature of one or more of the appointed Substitute Trustees is void?

146.7.     Whether an Order to Docket executed by a person other than an attorney confers any jurisdiction on the court?

146.8.     Whether an Order to Docket executed by a person other than the person indicated confers any jurisdiction on the court?

146.9.     Whether a trustee may proceed with a foreclosure if a Notice of Intention to Foreclose contains false, falsely executed, or inaccurate information when that information is mandated by Maryland statutes to be a condition precedent to a foreclosure sale?

146.10.    Whether an affidavit required by Real Prop., § 7-105.1(d)(1)(ii) as a condition precedent to foreclosure that was not executed by the affiant but executed by someone signing the affiant's name is valid and, if not, the effect of the counterfeit affidavit on the trustees legal right to proceed.

146.11.    Whether an affidavit required by Real Prop., § 7-105.1(d)(2)(ii) as a condition precedent to foreclosure that was not executed by the affiant but exe-

cuted by someone signing the affiant's name is valid and, if not, the effect of the coun-
terfeit affidavit on the trustees legal right to proceed.

146.12.   Whether an affidavit required by Real Prop., § 7-105.1(d)(2)(iii)
as a condition precedent to foreclosure that was not executed by the affiant but exe-
cuted by someone signing the affiant's name is valid and, if not, the effect of the coun-
terfeit affidavit on the trustees legal right to proceed.

146.13.   Whether an affidavit required by Real Prop., § 7-105.1(d)(2)(v)
as a condition precedent to foreclosure that was not executed by the affiant but exe-
cuted by someone signing the affiant's name is valid and, if not, the effect of the coun-
terfeit affidavit on the trustees legal right to proceed.

146.14.   Whether service required by Real Prop., § 7-105.1(e) as a con-
dition precedent to foreclosure that includes false or fabricated, documents that are
conditions precedent to a foreclosure sale is effective as service and, if not, the effect of
the inadequate service on the trustees legal right to proceed.

146.15.   Whether an affidavit required by Real Prop., § 7-105.2(c)(3)(ii)
as a condition precedent to foreclosure that was not executed by the affiant but exe-
cuted by someone signing the affiant's name is valid and, if not, the effect of the coun-
terfeit affidavit on the trustees legal right to proceed.

146.16.   Whether an affidavit required by Real Prop., § 7-105.9(e) as a
condition precedent to foreclosure that was not executed by the affiant but executed by

someone signing the affiant's name is valid and, if not, the effect of the counterfeit affidavit on the trustees legal right to proceed.

146.17.   Whether a note provided to the court as a condition precedent to a foreclosure that the trustees certify as a true and accurate copy of the note but that is not a true and accurate copy of the note renders the subsequent sale void or voidable.

146.18.   Whether a trustees' deed, i.e., a deed allegedly executed by a trustee to transfer title to real property to the purchaser at a foreclosure sale, that is not executed by any trustee and that contains a false, fabricated, or counterfeit notary authentication, is void or voidable.

147.   The only question of either law or fact not common to the Class is the amount of the actual damages for each member of the Class.   These damages may however be easily determined by simple mathematical calculations based upon the Defendant's own billing records concerning the class member's mortgage accounts and statistical sampling of the class members' credit damage, attorney fees paid to defend the bogus actions, and emotional damages.

### TYPICALITY

148.   The Defendants' conduct in each of the Class members' foreclosure case is not only typical of every Class members' foreclosure, the conduct is identical except in

degree, *i.e.,* the number of false, defective, bogus, fabricated, or counterfeit documents filed in each foreclosure.

149.   The Plaintiffs and Class members believe that the number of deceptions and untrue representations on the state court per foreclosure action is <u>not</u> a distinction as to any cause of action that would have an effect on the typicality issue.   In other words, for the issue of typicality, the fact that the Defendants filed only three or four false, fabricated,  or counterfeit documents in one foreclosure and six or seven counterfeit documents in another foreclosure is not relevant to liability under any cause of action.

### ADEQUACY OF REPRESENTATION

150.   The Plaintiff and proposed Class are represented by Gerald Solomon and John J. Bascietto of Solomon & Bascietto, LLC, Scott C. Borison, and Michael Gregg Morin.

151.   The Plaintiffs' attorneys, based on their experience and expertise in litigation of the issues in this case, adequately represents the Class.   The Plaintiff's attorneys experience and expertise include, collectively more than 4,000 consumer cases, dozens of mortgage defense cases, foreclosure fraud cases, and class actions including several before this Court.

## PREDOMINANCE AND SUPERIORITY

152.   A class action is superior to any other available method for the fair and efficient adjudication of the controversy because:

152.1.   Common questions of law and facts predominate over any individual questions that may arise.

152.2.   No individual member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

152.3.   Upon information and belief, there are no pending lawsuits concerning this controversy although some issues have been raised as a defense in approximately a half dozen state cases.

152.4.   It is desirable to concentrate the litigation of these claims in this forum since the acts complained of took place in this district and this forum is convenient to the parties, the Class members, the Defendants, and the potential witnesses.

152.5.   The resolution of the claims of all Class members in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation.

152.6.   With potential damages exceeding $100,000,000.00, the liability exceeds the Defendants' assets and all potential insurance proceeds.  Trying the issues raised in various individual cases in federal and state courts would result in an unmanageable situation in which the individual victims would be in a rush to be the first to obtain judgments before all potential payment of damages would be exhausted.

152.7.    Prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendants.

152.8.    The Class and each Sub-Class is specifically identifiable to facilitate provisions of adequate notice and there will be no significant problems managing this case as a class action.  (Each potential member of the Class is readily identifiable by electronic public records, i.e., the Maryland Judiciary Case Search.  Additionally, a review of the dockets available through the Maryland Judiciary Case Search will allow the Plaintiffs' attorneys to confirm each member of each sub-class.)

152.9.    Resolution of the Class members' claims in this single class action is superior to resolution of this controversy through the filing of a host of individual claims — potentially 12,500 individual claims — as a matter of efficiency, consistency, and that it removes economic and other barriers to Class members pursuing their claims.  (It is reasonable to assume that the vast majority of Class members, who have lost their homes through the Defendants' fraud, would not be in a financial position to retain individual attorneys.)

152.10.    This Court may avail itself of any questions concerning the liability of the Defendants under state law as asserted herein, the Court may certainly exercise its discretion and certify the appropriate questions to the Maryland Court of Appeals.  Maryland Uniform Certification of Questions of Law Act, Maryland Code (1974,

2006 Repl. Vol.), Sections 12-601 *et seq.* of the Courts and Judicial Proceedings Article and Maryland Rule 8-305.

**FIRST CAUSE OF ACTION**

**Violation of the Fair Debt Collection Practices Act (FDCPA)**

**(15 U.S.C. § 1692, et seq.)**

*Plaintiffs and the FDCPA Sub-Class sue Defendants Bierman, Geesing, and Ward and state:*

153.    The Plaintiffs and Class members adopt by reference the allegations contained in all previous paragraphs of this Complaint with the same effect as if herein fully set forth.

154.    Each member of the class is a "consumer" as that term is defined by FDCPA.  15 U.S.C. § 1692a(3).

155.    Each mortgage on real property, that is owner-occupied by a natural person, is a "debt" as that term is defined by FDCPA.  15 U.S.C. § 1692a(5).

156.    Defendants Bierman, Geesing, and Ward are each a "debt collector" as that term is defined by FDCPA.  15 U.S.C. § 1692a(6) and *Wilson v. Draper Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir (2006)).

157.    Defendants Bierman, Geesing, and Ward violated FDCPA (15 U.S.C. § 1692e(5)) by threating to take and actually taking action that they could not take in that they docketed foreclosures with the knowledge that they would improperly support

the docketing with false, defective, bogus, fabricated, or counterfeit affidavits, support the sales of consumer homes with false, defective, bogus, fabricated, or counterfeit affidavits, and obtain ratification of sales with false, defective, bogus, fabricated, or counterfeit affidavits.

158.   Every false, defective, bogus, fabricated, or counterfeit affidavit filed by Defendants Bierman, Geesing, and Ward in support of the docketing of a foreclosure, the sale of consumers' homes, and the ratification of a foreclosure sale was a false representation or a deceptive means to collect or attempt to collect a consumer debt in violation of FDCPA.  15 U.S.C. § 1692e(10) and § 1692f.

159.   The violations of the FDCPA by Defendants Bierman, Geesing, and Ward were frequent, persistent, consistent, and intentional.

160.   During all dates relevant to this civil action, Defendants Bierman, Geesing, and Ward had the resources to have properly and legally prosecuted every foreclosure; however, they choose to prosecute every foreclosure illegally in order to maximize their profits regardless of the risk to their clients and regardless of the devastating financial and emotional consequences to the thousands of mortgagors and their families.

161.   Each member of the FDCPA Sub-Class has suffered actual damages as the direct result of the violation of the FDCPA by Defendants Bierman, Geesing, and Ward which are identical to those suffered by the Named Plaintiffs and described above.

162.   Bierman, Geesing, and Ward were the principals of, employees of, or agents of BGWW.  Bierman, Geesing, and Ward committed the acts and omissions de-

tailed in preceding paragraphs within the scope of their employment or agency.  BGWW is jointly and severally liable with Bierman, Geesing and Ward for the acts and omissions of Bierman, Geesing and Ward.

**WHEREFORE**, Each Plaintiff and each member of the FDCPA Sub-Class demand judgment against Howard N. Bierman, George Jacob Geesing, and Carrie M. Ward, jointly and severally, for

[1]   Certify this civil action as a class action with Stewart, Nachbar, and the Lembachs, as the Class representatives and their attorneys; Solomon, Bascietto, Borison, and Morin; as counsel on behalf of the Class;

[2]   Statutory damages of $1,000.00 for each Plaintiff as allowed by 15 U.S.C. § 1692k(a)(2)(B)(i);

[3]   Statutory damages for each member of the FDCPA Sub-Class, other than named Plaintiffs, not to exceed the lessor of $500,000.00 or 1% of the total collective net worth of Defendants Bierman, Geesing, Ward, and Bireman, Geesing, Ward, and Wood, LLC as allowed by 15 U.S.C. § 1692k(a)(2)(B)(ii);

[4]   Actual damages for each Plaintiff and each member of the FDCPA Sub-Class (estimated to be not less than $40,000,000.00);

[5]   Attorneys' fees;

[6]   The costs of this civil action; and

[7]   Other relief as the Court may find necessary and appropriate.

**SECOND CAUSE OF ACTION**

**Violation of Maryland Real Property Article, §§ 7-105.1 or 7-105.2**

*Plaintiffs and § 7-105.1 Sub-Class sue Defendants Bierman, Geesing Ward, and BGWW and state:*

163.   The Plaintiffs and Class members adopt by reference the allegations contained in all previous paragraphs of this Complaint with the same effect as if herein fully set forth.

164.   Md. Code Ann., Real Prop., § 7-105.1(i)[2] states:  "An action for failure to comply with the provisions of this section shall be brought within 3 years after the date of the order ratifying the sale."

165.   Md. Code Ann., Real Prop., § 7-105.2(e) states:  "The right of a record owner to file an action for the failure of the person authorized to make a sale in an action to foreclose a mortgage or deed of trust shall expire 3 years after the date of the order ratifying the foreclosure sale."

166.   Real Prop., §§ 7-105.1 and 7-105.2 mandate that certain notices, documents, statements, and affidavits be provided to mortgagors, homeowners, and third parties during the foreclosure process.  Additionally, Real Prop., §§ 7-105.1 and 7-105.2 mandate that certain of these notices, documents, statements, and affidavits be filed with the court in which the foreclosure is to be filed or has been filed.

---

[2]  Real Prop., § 7-105.1 as it existed from 3 April 2008 through 31 May 2010.

167.   Each requirement of §§ 7-105.1 and 7-105.2 is a statutory condition precedent to docketing a foreclosure, conducting a foreclosure sale, or ratifying a foreclosure sale.

168.   Defendants Bierman, Geesing, and Ward failed to comply with the provisions of Real Prop., §§ 7-105.1 and 7-105.2 in that they knowingly and willfully filed false, fabricated, and counterfeit documents in support of the Order to Docket in every, or virtually every, foreclosure docketed from January 2006 through November 2009.

169.   Each such false, fabricated, or counterfeit affidavit was filed in lieu of an affidavit or statement required as a condition precedent.

170.   Each such false, fabricated, or counterfeit affidavit or statement is, at best, a nullity and, as a condition precedent, renders any foreclosure sale void.

171.   In each foreclosure case, Defendants Bierman, Geesing, and Ward obtained a ratification of the sale by false, fabricated, or counterfeit affidavits in addition to the false, fabricated, or counterfeit affidavits filed with the Order to Docket.

172.   As a direct result of the acts of Bierman, Geesing, and Ward, Maryland courts ratified the foreclosure sale of Stewart's Property and ratified the foreclosure sales of the homes of each member of the § 7-105.1 Sub-Class.

173.   Each member of the § 7-105.1 Sub-Class suffered actual damages as a direct result of the failure of Defendants Bierman, Geesing, and Ward to comply with the provisions of Real Prop., §§ 7-105.1 and 7-105.2  identical to those damages suffered by the Named Plaintiffs and described above.

174.   Bierman, Geesing, and Ward were the principals of, employees of, or agents of BGWW.  Bierman, Geesing, and Ward committed the acts and omissions detailed in preceding paragraphs within the scope of their employment or agency.  BGWW is jointly and severally liable with Bierman, Geesing and Ward for the acts and omissions of Bierman, Geesing and Ward.

**WHEREFORE**, Plaintiffs and each member of the § 7-105.1 Sub-Class demand judgment against Howard N. Bierman, George Jacob Geesing, and Carrie M. Ward, jointly and severally, for:

[1]   Certify this civil action as a class action with Stewart, Nachbar, and the Lembachs, as the Class representatives and their attorneys; Solomon, Bascietto, Borison, and Morin; as counsel on behalf of the Class;

[2]   Actual damages for each Plaintiff and each member of the MCPA/MCDCA Sub-Class (estimated to be not less than $100,000,000.00);

[3]   The costs of this civil action; and

[4]   Other relief as the Court may find necessary and appropriate.

### THIRD CAUSE OF ACTION

### Negligence

*Plaintiffs and the MCPA/MCDCA Sub-Class sue Defendants Bierman, Geesing, and Ward and state:*

175.    The Plaintiffs and Class members adopt by reference the allegations contained in all previous paragraphs of this Complaint with the same effect as if herein fully set forth.

176.    Each Plaintiff and Class member executed a deed of trust as security for a mortgage on their owner-occupied home.

177.    Every trustee, including any substitute trustee, named in the initial deeds of trust had both a legal and an equitable fiduciary duty to the relevant Plaintiff or Class Member.

178.    Bierman, Geesing, and Ward, individually and collectively, knowingly made the decision to become trustees of substitute trustees with all of the responsibilities and obligation of trustees and substitute trustees.

179.    Bierman, Geesing, and Ward were appointed as trustees or Substitute Trustees by the relevant note holders; however, Bierman, Geesing, and Ward had both a legal and an equitable fiduciary duty to the relevant Plaintiff or Sub-Class member.

180.    Trustees and Substitute Trustees become the agent of the court upon docketing a foreclosure action but they were not appointed by the state courts.

181.   Upon docketing a foreclosure or causing the docketing of a foreclosure, Bierman, Geesing, and Ward had a responsibility and duty to the Plaintiffs and Sub-Class members to comply with Maryland statutes and Maryland Rules pertinent to the foreclosure process.

182.   Among the duties voluntarily assumed by Bierman, Geesing, and Ward were the duties to comply with Real Prop., §§ 7-105.1, 7-105.2 and Maryland Rules, Title 14.

183.   Real Prop., §§ 7-105.1 and 7-105.2 mandate that certain notices, documents, statements, and affidavits be provided to mortgagors, homeowners, and third parties during the foreclosure process.  Additionally, Real Prop., §§ 7-105.1 and 7-105.2 mandate that certain of these notices, documents, statements, and affidavits be filed with the court in which the foreclosure is to be filed or has been filed.

184.   Each requirement of §§ 7-105.1 and 7-105.2 is a statutory condition precedent to docketing a foreclosure, conducting a foreclosure sale, or ratifying a foreclosure sale.

185.   Maryland Rule § 14-305 mandates specific post-foreclosure sale procedures as a precondition to any ratification of a foreclosure sale.

186.   Defendants Bierman, Geesing, and Ward failed to comply with the provisions of Real Prop., §§ 7-105.1, 7-105.2, and Maryland Rules, Title 14 in every, or virtually every, foreclosure docketed from 4 April 2008 through 31 May 2010.

187.   Each such fabricated, or counterfeit affidavit was filed in lieu of an affida-vit, statement, or Report of Sale required by Real Prop., §§ 7-105.1, 7-105.2, or Mary-land Rules, Title 14.

188.   Each such fabricated, or counterfeit affidavit, statement, or Report of Sale is, at best, a nullity and, as a condition precedent, renders any foreclosure sale void.

189.   Each failure of Bierman, Geesing, or Ward to comply with Real Prop., §§ 7-105.1, 7-105.2, and Maryland Rules, Title 14, is negligence *per se.*

190.   Bierman, Geesing, and Ward breached their fiduciary duties to the Plain-tiffs, the Class members, and the court each time that they filed a false, fabricated, or counterfeit document in a foreclosure action.

191.   The conduct of Bierman, Geesing, and Ward injured the public interest.

192.   Each Plaintiff and Sub-Class member suffered actual damages as the di-rect result of the negligence of Bierman, Geesing, and Ward identical to those damages suffered by the Named Plaintiffs and described above.

193.   Bierman, Geesing, and Ward were the principals of, employees of, or agents of BGWW.  Bierman, Geesing, and Ward committed the acts and omissions de-tailed in preceding paragraphs within the scope of their employment or agency.  BGWW is jointly and severally liable with Bierman, Geesing and Ward for the acts and omis-sions of Bierman, Geesing and Ward.

**WHEREFORE**, Each Plaintiff and each member of the MCPA/MCDCA Sub-Class demand judgment against Howard N. Bierman, George Jacob Geesing, and Carrie M. Ward, jointly and severally, for:

[1]   Certify this civil action as a class action with Stewart, Nachbar, and the Lembachs, as the Class representatives and their attorneys; Solomon, Bascietto, Borison, and Morin; as counsel on behalf of the Class;

[2]   Actual damages for each Plaintiff and each member of the MCPA/MCDCA Sub-Class (estimated to be not less than $100,000,000.00);

[3]   The costs of this civil action; and

[4]   Other relief as the Court may find necessary and appropriate.

### FOURTH CAUSE OF ACTION

### Violation of the Maryland Consumer Protection Act (MCPA/MCDCA)

### and Maryland Consumer Debt Collection Act (MCDCA)

### (MD. CODE ANN., COM. LAW, §§ 13-101, *et seq.* and §§ 14-201 *et seq.*)

*Plaintiffs and MCPA/MCDCAMCPA/MCDCA/MCDCA Sub-Class sue Defendants Bierman, Geesing, and Ward and state:*

194.   The Plaintiffs and Class members adopt by reference the allegations contained in all previous paragraphs of this Complaint with the same effect as if herein fully set forth.

195.    The Plaintiffs and MCPA/MCDCA Sub-Class members are each a consumer as that term is defined by MCPA and MCDCA.

196.    Bierman, Geesing, and Ward are each a debt collector as that term is defined by MCPA/MCDCA.

197.    Maryland requires that trustees attempting to foreclose on real property be natural persons.

198.    Maryland has <u>no</u> requirement that trustees attempting to foreclose on real property be attorneys.

199.    Although Bierman, Geesing, and Ward are attorneys, the conduct complained of in this complaint is in their capacity as trustees rather than the fact that they are also attorneys.  In addition, as demonstrated by the facts herein, Bierman, Geesing, and Ward were <u>not</u> acting within the scope of their license as attorneys and therefore are not entitled to claim any exemption from liability.

200.    Bierman, Geesing, and Ward, individually and collectively, have made misstatements to the Plaintiffs and MCPA/MCDCA Sub-Class members by providing to the Plaintiffs and MCPA/MCDCA Sub-Class members numerous fabricated, and counterfeit documents with the intent that the Plaintiffs and MCPA/MCDCA Sub-Class members rely on the documents.  Such conduct is unfair or deceptive trade practices pursuant to the MCPA/MCDCA.

201.  Bierman, Geesing, and Ward have violated the MCDCA by claiming, attempting, or threatening to enforce rights with the knowledge that the right did not exist.

202.  A violation of MCDCA is a violation of MCPA.

203.  The Plaintiffs and MCPA/MCDCA Sub-Class have each suffered damages as the direct result of Bierman, Geesing, and Ward violations of the MCDCA and MCPA/MCDCA which are identical to those actual damages suffered by the Named Plaintiffs and described above.

204.  Bierman, Geesing, and Ward were the principals of, employees of, or agents of BGWW.  Bierman, Geesing, and Ward committed the acts and omissions detailed in preceding paragraphs within the scope of their employment or agency.  BGWW is jointly and severally liable with Bierman, Geesing and Ward for the acts and omissions of Bierman, Geesing and Ward.

**WHEREFORE**, Each Plaintiff and each member of the MCPA/MCDCA Sub-Class demand judgment against Howard N. Bierman, George Jacob Geesing and Carrie M. Ward, jointly and severally, for:

[1]  Certify this civil action as a class action with Stewart, Nachbar, and the Lembachs, as the Class representatives and their attorneys; Solomon, Bascietto, Borison, and Morin; as counsel on behalf of the Class;

[2]  Actual damages for each Plaintiff and each member of the MCPA/MCDCA Sub-Class (estimated to be not less than $100,000,000.00);

— 54 —

[3]     Attorney fees;

[4]     The costs of this civil action; and

[5]     Other relief as the Court may find necessary and appropriate.

## FIFTH CAUSE OF ACTION

### Declaratory Judgment

### (Md. Code Ann., Cts. & Jud. Proc., § 3-406)

*(The Plaintiffs have dismissed the Fifth Couse of Action (see, Doc. 25).*

## SIXTH CAUSE OF ACTION

### Respondeat Superior

*Plaintiffs and the Class sue Defendant BGWW and state:*

205.    The Plaintiffs and Class members adopt by reference the allegations contained in all previous paragraphs of this Complaint with the same effect as if herein fully set forth.

206.    On all dates relevant to this civil action, Bierman, Geesing, and Ward were the principals of, employees of, or agents of BGWW.

207.    Bierman, Geesing, and Ward committed the acts and omissions detailed in preceding paragraphs within the scope of their employment or agency.

208.    The Plaintiffs and each member of the Class have suffered damages as the direct result of the acts and omissions of Bierman, Geesing and Ward.

209.   BGWW is jointly and severally liable with Bierman, Geesing and Ward for the acts and omissions of Bierman, Geesing and Ward.

**WHEREFORE**, each Plaintiff and each member of the Class demand judgment against Bierman, Geesing, Ward & Wood, LLC, for all compensatory damages awarded to the Plaintiff and Class members in Counts I through VI, both counts inclusive, of this Complaint and for such other relief as the Court may find necessary and appropriate.

Respectfully Submitted:

By:   */s/ Gerald Solomon*
Gerald Solomon, Esq.
Federal Bar No. 04287
Solomon & Bascietto, LLC
9857 Majestic Drive
Boynton Beach, Florida  33437
Telephone:  800.604.7449
Facsimile:  561.735.3536
E-mail:  jerry@saveyourdream.us

By:   */s/ John J. Bascietto*
John J. Bascietto, Esq.
Federal Bar No. 28289
Solomon & Bascietto, LLC
4741 Sellman Road
Beltsville, Maryland  20705
Telephone:  240.206.6002
Facsimile:  240.2710
E-mail:    johnbaslaw@gmail.com

By:     */s/ Scott C. Borison*
        Scott C. Borison, Esq.
        Federal Bar No. 22576
        5500 Buckeystown Pike
        Frederick, Maryland  21703
        Telephone:  301.620.1016
        Facsimile:  301.620.1018
        E-mail:  borison@legglaw.com

By:   */s/ Michael Gregg Morin*
        Michael Gregg Morin, Esq.
        Federal Bar No. 15399
        Post Office Box 778
        Severn, Maryland  21144-0778
        Telephone:  410-551.4340
        Facsimile:  855.329.6453
        E-mail:  mikemorin.morinlaw@gmail.com

### CERTIFICATE OF SERVICE

I certify that I have caused to be served a copy of this First Amended Complaint on each of the attorneys of record via the Court's ECF system.

        */s/ Michael Gregg Morin*
        Michael Gregg Morin, Esq.
        Federal Bar No. 15399