## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **MARJORIE STEWART,** *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Case No.: RWT 10cv2822 |
| | * | |
| **HOWARD BIERMAN,** *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

### *** 
### <u>MEMORANDUM OPINION</u>

On October 13, 2010, Marjorie Stewart ("Stewart"), Jay Nachbar ("Nachbar"), and Gerald and Debbie Lembach ("Lembachs") (collectively, "Plaintiffs") filed suit against Howard Bierman, George Geesing, Carrie Ward, and the law firm of Bierman, Geesing, Ward & Wood, LLC ("BGWW") (collectively, "Defendants"). All claims in this putative class action arise from Defendants' conduct in the initiation of foreclosure proceedings on Plaintiffs' homes. Plaintiffs' six count Complaint alleges that Defendants participated in fraudulent "robo-singings" to initiate foreclosure proceedings. *See* Compl. Defendants filed a motion to dismiss on January 6, 2011, Doc. No. 10, and this Court held a hearing on the motion on July 8, 2011. After the hearing, Plaintiffs moved for leave to file a first amended complaint, Doc. No. 26, which this Court granted in part and denied in part. Doc. No. 29.

Plaintiffs then filed a five count Amended Complaint on August 24, 2011, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692, *et seq.*, violations of Maryland Real Property Article §§ 7-105.1 and 7-105.2, negligence, violations of the Maryland Consumer Protection Act and Maryland Consumer Debt Collection Act, and respondeat superior. Doc. No. 31. On September 21, 2011, Defendants filed a Motion to

Dismiss the First Amended Compliant.  Doc. No. 32.  On September 29, 2011, Plaintiffs filed a Motion to Certify Questions of Law to the Court of Appeals of Maryland, Doc. No. 35, and a Motion to Stay Pending Answer.  Doc. No. 33.  On February 8, 2012, this Court held a hearing on the pending motions.  For the reasons discussed below, the Defendants' motion will be granted, and the Plaintiffs' motions will be denied.

## I.     Background Facts

Bierman, Geesing, and Ward are attorneys licensed in Maryland, and all are principals of BGWW.  Am. Compl. ¶¶ 15-17, 22-25.  As part of their practice, each defendant purportedly acted as a substitute trustee under deeds of trust recorded against real property owned by Maryland homeowners.  *Id.* ¶ 26.  Defendants subsequently docketed foreclosure actions against many of these homeowners and litigated any contested foreclosure sales.

Under Maryland law, certain documents must be filed with the court to initiate foreclosure proceedings.  *Id.* ¶ 3.  Since 2004, Bierman, Geesing, and Ward allegedly have failed to personally execute many of these required documents.  *Id.* ¶¶ 32-33.  Instead, Bierman, Geesing, and Ward instructed BGWW employees to sign their names on documents submitted to Maryland state courts and instructed BGWW notaries to certify those documents as having been signed by them.  *Id.* ¶¶ 32-33, 33.3-33.4.  These documents included orders to docket, affidavits, and appointments of substitute trustees.  *Id.*  Bierman, Geesing, and Ward also allegedly began requiring BGWW clerical employees to forge notary signatures and affix notary stamps on these same documents.  *Id.* ¶¶ 33.6-33.8.  All these actions in preparing, executing, and filing documents were allegedly done to expedite the foreclosure process, but none is alleged by the Plaintiffs to have been factually incorrect as to the existence of a secured debt or the delinquency of the Plaintiffs.

After judicial ratification of the foreclosure sales, Defendants also allegedly directed BGWW clerical employees to affix the signatures of Bierman, Geesing, Ward, and others on trustee's deeds, which resulted in the transfer of legal title to third parties.  Plaintiffs allege that Bierman, Geesing, and Ward knew that this process created thousands of "counterfeit" trustee's deeds.  *Id.* ¶¶ 33.9-34.  Plaintiffs maintain that each fraudulent trustee's deed is a counterfeit document, which is void and actually transferred no interest in real property.  *Id.* ¶ 33.10.  They suggest that "[e]ach such counterfeit deed remains a cloud on title."  *Id.* ¶ 40.

Only the Lembachs' claims are still properly before this Court.  The Court previously found that Stewart's claims are barred by the doctrines of issue and claim preclusion, and that "any proposed amendments relating to Stewart's claims are futile, and allegations and claims relating to the Stewart foreclosure will be stricken from the First Amended Complaint."  Doc. No. 29 at 10.  Additionally, Plaintiffs informed the Court on November 18, 2011 of Nachbar's death, but never filed a substitution of party.  Doc. No. 47.  Accordingly, the Nachbar claim also is no longer before this Court.

The Lembachs own real property located in Anne Arundel County, Maryland ("Lembach Property").  Am. Compl. ¶ 115.  The Lembachs fell behind on their mortgage payments, and the lender for the Lembach Property, Deutsche Bank, appointed BGWW as substitute trustee under a deed of trust on or about September 22, 2009.  *Id.* ¶¶ 116-19.  Plaintiffs maintain that employees of BGWW fabricated signatures on the Order to Docket and other papers containing the alleged signatures of the trustees (Bierman, Geesing, and Ward).  *Id.* ¶ 120.  BGWW filed an Order to Docket a Foreclosure against the Lembach Property on September 28, 2009.  *Id.* ¶ 122.  Defendants dismissed the first foreclosure proceeding on December 14, 2009, and later docketed a second foreclosure action on March 17, 2010.  *Id.* ¶ 133-34.  Plaintiffs allege that Defendants

relied on fraudulent documents in the second proceeding, *id.* ¶¶ 135-139, which "was dismissed by the state court." *Id.* ¶ 140.  No foreclosure action is pending against the Lembachs.

## II.     Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"—that the pleader is entitled to relief."  *Id*. at 1950; *see also Simmons v. United Mortg. & Loan Invest.*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff.  *See Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation

marks omitted).  "'Thus, in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (quoting *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009)).

### III.     Analysis

#### A. Plaintiffs' FDCPA Claims Fail to State a Claim Upon Which Relief can be Granted

"The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage.  Section 1692e forbids the use of any false, deceptive, or misleading representation or means in debt collection and provides a non-exhaustive list of prohibited conduct." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996) (quotation omitted).  The Amended Complaint alleges Defendants violated FDCPA §§ 1692e(5), 1692e(10),[1] and 1692(f).[2]  To succeed on a FDCPA claim a plaintiff must demonstrate that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt[] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."

---

[1] The relevant portions of § 1692e provide,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

[2] Section 1692f states, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.

*Dikun v. Streich*, 369 F. Supp. 2d 781, 784-85 (E.D.Va. 2005); *Johnson v. BAC Home Loans Servicing*, __ F. Supp. 2d __, 2011 WL 4550142, at * 6 (E.D.N.C. Sept. 29, 2011).

Defendants argue the FDCPA claims must be dismissed because (1) the claims are time-barred; (2) Defendants are not "debt collectors" within the meaning of the Act; (3) the alleged violations of the FDCPA are not material; and (4) Plaintiffs fail to articulate a separate claim under 15 U.S.C. § 1692f.

### i.   Plaintiffs' FDCPA Claims are not Barred by the Statute of Limitations

Defendants argue that Plaintiffs failed to initiate this case within the one year statute of limitations provided for FDCPA claims in 15 U.S.C. § 1692k(d).  They maintain that Plaintiffs were served with the initial foreclosure papers on or before September 28, 2009, and the Complaint was not filed until October 13, 2010.  Doc. No. 32 at 21.  Plaintiffs argue that, due to Defendants' fraud that was only discovered after the docketing of court material that was "robo-signed," they had no reason to know of the time-barred violations until after October 13, 2009.

Under the FDCPA, "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  "Generally, the statute of limitations begins to run when a communication violating the FDCPA is sent."  *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004) (citation omitted).  This Court, however, has applied the discovery rule in the debtor rights context and held that a FDCPA claim accrues at the time of the violation or when the plaintiff should have known of the violation.  *See id.* (finding that plaintiff would not have known about potential FDCPA violations until after the time he obtained his credit report) (citing 1 THEODORE EISENBERG, *Debtor-Creditor Law,* § 8.04[10] (2004)).  These principles are applicable here.

The Amended Complaint contains facts that allege FDCPA violations that occurred within the limitations period because Plaintiffs contend that they did not discover the fraud until *after* the filing of the foreclosure actions.  *See, e.g.*, Am. Compl. ¶ 36 ("There was no reasonable possibility that any of the parties affected by these actions could have known about the defects in the affidavits, papers, deeds, and other documents which claimed to have been executed by the Defendants."); *id* ¶ 41 ("In late fall 2009, some Maryland attorneys discovered Defendants' fraud on Maryland courts and on thousands of Maryland consumers."); *id.* ¶ 133 ("Having realized that their fraudulent conduct had been discovered, Bierman, Geesing, and Ward dismissed the First Lembach Foreclosure on or about 14 December 2009.").

Therefore, Plaintiffs' FDCPA claims are not barred by the applicable statute of limitations because they filed their Complaint within one year of discovering the Defendants' alleged fraudulent actions on which they base their claims.

### ii.   Defendants are Debt Collectors Under the FDCPA

Defendants also argue they are not "debt collectors" under the FDCPA because, as substitute trustees, they are merely seeking to foreclose on security interests.  Doc. No. 32 at 11-14.  According to Defendants, this is insufficient to meet the statutory definition of a being a person who engages in "debt collection activity."  *Id.*  Plaintiffs respond that since Defendants were appointed as agents by the note holders to collect Plaintiffs' debts, they are debt collectors under the FCPA.  Am. Compl. ¶¶ 24-27.

The FDCPA defines a debt collector as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692(a)(6).  The Fourth Circuit has held that an attorney foreclosing on a property pursuant to a deed of trust can be a debt collector under the FDCPA.  *Wilson v. Draper & Goldberg*, 443 F.3d 373, 378-79 (4th Cir. 2006).  In *Wilson*, the Fourth Circuit held that "Defendants' foreclosure action was an attempt to collect a 'debt,' Defendants are not excluded from the definition of 'debt collector' under 15 U.S.C. § 1692a(6)(F)(i) merely because they were acting as trustees foreclosing on a property pursuant to a deed of trust, and Defendants can still be 'debt collectors' even if they were also enforcing a security interest."  *Id.* at 378-79; *see also Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) ("[T]he [FDCPA] applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation."); *Rawlinson v. Law Office of William M. Rudow*, Case No. 10-2148, 2012 WL 19666, at *2 (4th Cir. Jan. 5, 2012) ("*Wilson* controls here and it mandates that we hold that a debt secured by personal property is subject to the FDCPA requirements just as *Wilson* held that a debt secured by real property is subject to these requirements.").

Defendants' attempt to limit the holding of *Wilson* is not persuasive because they have regularly engaged in foreclosure proceedings.  Defendants argue that the Fourth Circuit "was careful to note that their holding applied to the specific facts before them, stating, '[o]ur decision is not intended to bring every law firm engaging in foreclosure proceedings under the ambit of the Act.'"  Doc. No. 32 at 12 (quoting *Wilson*, 443 F.3d at 379).  The court continued, however, by stating: "Nevertheless, it is well established that the Act applies to lawyers who regularly engage in consumer-debt-collection activity, even when that activity consists of litigation."  *Wilson*, 443 F. 3d at 379 (quotation omitted).  The court concluded that the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors . . . . As such, lawyers who regularly engage in consumer-debt-collection activity should not be allowed to

thwart this purpose merely because they proceed in the context of a foreclosure." *Id.* (quotation omitted).   Furthermore, adopting Defendants' interpretation of a "debt collector" under the FDCPA would rob consumers of the protection that the act is designed to provide.  *See id.* at 376 ("Defendant's argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt.").

Thus, the Court concludes that Defendants are "debt collectors" under the FDCPA.

### iii.   Plaintiffs Fail to Allege Facts That Demonstrate the Defendants Violated § 1692e Because Defendants' Misrepresentations are not Material

The Fourth Circuit has adopted the "least sophisticated consumer" standard to determine if a Section 1692e violation has occurred, i.e. a false statement that would not mislead the "least sophisticated consumer" is not actionable.  *See Nat'l Fin. Servs., Inc.*, 98 F.3d at 135-36; *see also Lane v. Fein, Such & Crane*, 767 F. Supp. 2d 382, 388 (E.D.N.Y. 2011) ("In general, courts analyze whether a statement is false or misleading under the terms of Section 1692e by asking whether the statement would be misleading to the least sophisticated consumer."); *Johnson*, 2011 WL 4550142, at *6 ("The standard of review in evaluating FDCPA claims is that of the 'least sophisticated debtor.'") (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999)). Recently, when applying this standard, "several courts have also held that a statement must be *materially* false or misleading to violate Section 1692e." *Lane*, 767 F. Supp. 2d at 388 (citation omitted) (emphasis in original).

Defendants argue the misrepresentations alleged in the Amended Complaint are not material, and therefore are insufficient to sustain an FDCPA claim.  Doc. No. 32 at 15-19. Defendants maintain that the method of applying signatures to otherwise substantially correct

legal foreclosure documentation is immaterial to the debtor.[3]  During the hearing on the motions, Plaintiffs argued that the signatures are material because, but for the signatures, the foreclosure cases would not have been before a court.   Although the Fourth Circuit has not directly addressed the materiality requirement for FDCPA claims arising under §§ 1692e(5), 1692e(10), or 1692(f), this Court concludes that a Plaintiff bringing such a claim must plead material violations in order to survive a motion to dismiss.

### 1.   Recent Developments Concerning Materiality Under the FDCPA

Defendants argue that federal courts have held that false but non-material representations are not actionable under §§ 1692e or 1692f citing Sixth, Seventh, and Ninth Circuit authority. Defendants also maintain that a recent Fourth Circuit opinion that relies on these cases indicates that the Fourth Circuit at least implicitly adopts the materiality holding.

In *Hahn v. Triumph P'ships*, the Seventh Circuit held that a false statement is not actionable under § 1692e unless it is material.  557 F.3d 755 (7th Cir. 2009).  The court found that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement."  *Id.* at 757 (citing *Carter v. United States*, 530 U.S. 255 (2000)); *Neder v. United States*, 527 U.S. 1 (1999).  The court did "not see any reason why materiality should not equally be required in an action based on § 1692e.  The statute is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if that statement is correct) nor undermines it (if the statement is incorrect)."  *Hahn*, 557 F.3d at 757-58 (citation omitted).   The court concluded that "[a] statement cannot mislead unless it is material, so a false but non-material statement is not actionable."  *Id.* at 758.

---

[3] Defendants also argue that signatures on affidavits by authorized agents cannot be considered falsely executed. They maintain that "[t]he permitted use of authorized agent's signatures on deeds and contracts is well established in Maryland."  Doc. No. 32 at 47-47 n.27 (collecting cases).  The Court need not address this argument.

The Sixth Circuit, in *Miller v. Javitch, Block & Rathbone*, adopted the Seventh Circuit's materiality analysis in the context of a FDCPA claim.  561 F.3d 588 (6th Cir. 2009).  In *Miller*, a debtor filed a putative class action alleging that a law firm and debt collection agency violated the FDCPA based on misleading statements contained in debt-collection complaints filed in state court.  *Id.* at 590-92.  The court found that the plaintiff's claim did not satisfy the materiality element required of "'any federal claim based on a false or misleading statement.'"  *Id.* at 596 (quoting *Hahn*, 557 F.3d at 757).  The court agreed with the Seventh Circuit that "'[a] statement cannot mislead unless it is material, so a false but non-material statement is not actionable'" and found that the language of the complaints filed in state court was not material because it would be understood by the least-sophisticated consumer.  *Id.*  (quoting *Hahn*, 557 at 757).

In *Donohue v. Quick Collect, Inc.*, the Ninth Circuit relied on both *Hahn* and *Miller* to conclude that a false statement must be material in order to violate the FDCPA.  592 F.3d 1027 (9th Cir. 2010).  In *Donohue*, the plaintiff alleged that a complaint filed in state court by a dental practice to collect monies owed violated the FDCPA because it contained statements that misrepresented the amount of interest the plaintiff and other similarly situated people owed.  *Id.* at 1029.  The court rejected the plaintiff's argument.  It found that although the complaint mislabeled the percentage of interest owed on the debt, it "correctly calculated the total debt [plaintiff] owed, accurately listed the total non-principal amount owed inclusive of interest and finance charges."  *Id.* at 1033.  The court found that the misstatement was not material.  The court "agreed with the approach adopted by the Sixth and Seventh Circuits . . . [and] held that whether conduct violates §§ 1692e or 1692f requires an objective analysis that considers whether the least sophisticated debtor would likely be misled by a communication."  *Id.* (citations omitted).  The court concluded that "false but non-material representations are not likely to

mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." *Id.*

The Fourth Circuit recently addressed whether a plaintiff needs to allege a material violation of the FDCPA in order to survive a motion to dismiss. *See Warren v. Sessoms & Rogers*, ___ F.3d ___, No. 10-2105, 2012 WL 76053, at *6-7 (4th Cir. Jan. 11, 2012). In *Warren*, the plaintiff alleged that the defendant failed to disclose that it was a debt collector in its communications with her in violation of § 1692e(11).[4] In discussing § 1692e, the court found that it "prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Id.* at *7. The statute "provides a non-exhaustive list of conduct that satisfies this general prohibition." *Id.* The court maintained that "[w]ith one exception, that list involves particular types of false or misleading representations from the debt collector." *Id.*

The Fourth Circuit found that "[a]lthough Congress did not expressly require that any violation of § 1692e be material, courts have generally held that violations grounded in false representations must rest on material representations." *Id.* In support of this proposition, the court discussed the holding in *Hahn* and included citations to both *Donohue* and *Miller*. The court held that the materiality requirement is not applicable to § 1692e(11) because the conduct contemplated there involves a failure to disclose rather than a false means used to collect a debt. *See id.* ("[W]hether a materiality requirement attaches to other violations of § 1692e has no

---

[4] 15 U.S.C. § 1692e(11) provides:

> The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

impact on [plaintiff]'s allegations that the defendants violated § 1692e(11).").   The court concluded that the district court erred in holding that the plaintiff failed to allege a violation of § 1692e(11) when she did not demonstrate that the defendant's omissions were material.  *See id.*

This Court is persuaded that the Fourth Circuit's citations of *Hahn*, *Donohue*, and *Miller* leads to the conclusion that in order to overcome a motion to dismiss a FDCPA claim that involves a false representation, a complaint "must contain sufficient factual matter, accepted as true," that the alleged false representations were material.  *See Iqbal*, 129 S. Ct. at 1949.

## 2.  Application to this Case

Defendants argue that the misrepresentations alleged in the Complaint are not material, and therefore are insufficient to sustain a FDCPA claim.  Doc. No. 32 at 15-19.  Defendants maintain that the method of applying signatures to otherwise substantially correct foreclosure documentation is irrelevant to the debtor.  Plaintiffs contend that the signatures are material because, but for the signatures, the case would not be before a court.  Defendants' argument is more persuasive.

Plaintiffs fail to allege any facts in their Amended Complaint that demonstrate that the signatures contained on the foreclosure documents were material.  The Plaintiffs do not identify a substantive error with respect to the debt or the timing of the foreclosure.  They also fail to allege that they relied on or were misled because someone other than the substitute trustee affixed his or her signature to an otherwise correct document evidencing their indebtedness.

 Plaintiffs' Amended Complaint alleges that the Defendants falsely executed signatures of a trustee in order to maintain a foreclosure action in state court.  *See, e.g.*, Am. Compl.¶¶ 124, 129, 135.  These allegations also fail to surpass the materiality threshold.  Plaintiffs admit that they "fell behind on their mortgage payments" and that their house was subject to foreclosure.

*Id.* ¶ 116.  Moreover, as discussed above, only the Lembachs' claims are the only ones properly before this Court because Stewart's claims are barred by the doctrines of issue and claim preclusion, and Plaintiffs informed the Court of Nachbar's death, but have not filed a substitution of party.   No foreclosure action is pending against the Lembachs.

Plaintiffs maintain that the "robo-signings" performed by Defendants were unfair and deceptive.  While the Court agrees that the Defendants' foreclosure practices were shortcuts that do not comply with the signature and acknowledgement requirements of the Maryland rules, the facts alleged by Plaintiffs do not rise to the level of materiality on which a FDCPA claim can be maintained.  Although the trustee signatures are alleged not to be those of the Defendants, they are not actionable because they were not material.  *See Warren*, 2012 WL 76053, at *7.  The Orders to Docket were correct in every way except that the signatures were affixed with the authority of the purported signer, but not in fact signed by the person whose name was affixed. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 332 (6th Cir. 2006) (rejecting plaintiff's argument that defendant's conduct violated Section 1692e because plaintiff "never denied in her complaint that she owed [defendant] a debt, nor did she claim that [defendants] misstated or misrepresented the amount that she owed"); *Johnson*, 2011 WL 4550142, at *10 ("To the extent Plaintiffs' allegations imply the filing of a lawsuit without substantiating documentation is false, deceptive or misleading, Plaintiffs do not state a claim [because] insufficient evidence or documentation claims based on the filing of a state court complaint do not constitute viable claims under section 1692e.") (quotation omitted).

Even assuming that the trustees' signatures were not their own, the signatures concern undisputedly accurate information concerning mortgage debts owed by Plaintiffs.  The signatures do not relate materially to the debt at issue, and Plaintiffs fail to assert how the allegedly

fraudulent signatures on indisputably accurate court filings would mislead the least sophisticated consumer in any way.

### iv.  Plaintiffs Fail to Allege a § 1692f Claim Upon Which Relief can be Granted

Defendants also argue that the Plaintiffs fail to allege any specific conduct that violates 15 U.S.C. § 1692f.  They maintain that "Plaintiffs have failed to allege what conduct is unfair or unconscionable with respect to each of them and his or her particular loan status and they fail to allege any misconduct under any sub-section of § 1692f beyond what Plaintiffs assert violate other provisions of the FDCPA, specifically 15 U.S.C. § 1692e(5) and (10)."  Doc. No. 32 at 20. Plaintiffs do not counter Defendants' arguments.

The "Unfair Practices" section of the FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  "The statute does not define unfair or unconscionable, but it does provide a non-exhaustive list of conduct that violates the section."  *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 366 (D. Md. 2010).

In *Donohue*, the Ninth Circuit, relying on *Hahn* and *Miller* held that "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e *or* 1692f."  592 F.3d at 1033 (emphasis added).  To the extent that the Fourth Circuit's holding in *Warren* applies the materiality requirement of § 1692e to § 1692f, this Court finds that Plaintiffs fail to plead any material allegations as discussed above. In the alternative, Plaintiffs' § 1692f claim should be dismissed because Plaintiffs fail to allege any misconduct separate and distinct from the §1692e claims.

In *Foti v. NCO Fin. Sys.*, the Southern District of New York found that "§ 1692f may provide a cause of action for conduct that is not specifically listed in that section or other

provision of FDCPA." 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006). However, the court concluded that because Plaintiffs' complaint "[did] not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA," the Defendant's motion to dismiss the § 1692f claim should be granted. *Id.*; *see Johnson*, 2011 WL 4550142, at *11 ("Plaintiffs' failure to allege other conduct that was unfair and unconscionable under section 1692f warrants dismissal of this claim."). Although § 1692f serves as a means for a court "to sanction improper conduct that the FDCPA fails to address specifically," *Foti*, 424 F. Supp. 2d at 667 (quotation omitted), Plaintiffs' § 1692f claim here fails to allege any conduct separate and distinct from the alleged § 1692e violations. *See* Am. Compl. ¶ 158 (anchoring the § 1692f claim with the §1692e(10) claim). All of Plaintiffs' allegations are asserted for actions arising under § 1692e. Plaintiffs fail to allege any separate facts that contend that Defendants engaged in unfair or unconscionable practices under § 1692f. Therefore Defendants' motion to dismiss the § 1692f claim will be granted.

## IV. Plaintiffs' State Law Claims Fail to State a Claim Upon Which Relief can be Granted

Under 28 U.S.C. § 1367, "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citation omitted). Factors that should guide a court's decision in exercising supplemental jurisdiction include "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citation omitted). "The doctrine of supplemental jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id.* (quotation omitted).

16

Plaintiffs' state law claims are closely related to their FDCPA claims, and, for the convenience and fairness to the parties, the Court can easily dispense with them. Accordingly, this Court will exercise supplemental jurisdiction to address the remaining claims.

**a. Plaintiffs' Maryland Real Property Article §§ 7-105.1 and 7-105.2 Claims Fail Because Plaintiffs are not Subject to a Foreclosure Action**

Maryland Real Property Article §§ 7-105.1 and 7-105.2 regulate the notices to be given and procedures to be followed in the state foreclosure process. If these notices are not given or the procedures not followed, plaintiffs have three years, after ratification of a sale, within which to bring a cause of action. *See* MD. CODE ANN. REAL PROP. § 7-105.1(o) ("An action for failure to comply with the provisions of this section shall be brought within 3 years *after* the date of the order ratifying sale.)" (emphasis added); *id.* § 7-105.2(e) ("The right of a record owner to file an action for failure of the person authorized to make a sale in an action to foreclose a mortgage or deed of trust to comply with the provisions of this section shall expire 3 years *after* the date of the order ratifying the foreclosure sale.") (emphasis added). The Fourth Circuit, in an unpublished opinion, described § 7-105.1 as a statute that "simply addresses actions brought in response to the *in rem* variety of foreclosures—those which the mortgagor did not challenge directly in the first instance." *Jones v. HSBC Bank*, Case No. 11-1197, 2011 WL 3734984, at *4 (4th Cir. Aug. 25, 2011). "In other words, the mortgagor is entitled to litigate his objections only once: he may *defend against the original foreclosure action directly*, or he may bring a separate, offensive suit *within three years of the sale*, he may not do both." *Id.* (emphasis added).

Defendants argue that no cause of action exists for the Plaintiffs because "there has been no ratification of a sale and they remain in their homes." Doc. No. 32 at 26; Am. Compl. ¶ 140. They maintain that "[w]ithout a foreclosure and ratification, any claim that they might at some point have related to a foreclosure that has not yet occurred is obviously premature."

Doc. No. 32 at 26.  This Court agrees.  Plaintiffs previously conceded that "[t]he Defendants correctly note that for named Plaintiffs Nachbar and the Lembachs no cause of action can have accrued as there has been neither a sale nor a ratification of a sale for those Plaintiffs." Doc. No. 14 at 43.  Therefore, Defendants' motion to dismiss Count II as to the Lembachs, the only remaining named Plaintiffs, will be granted because that Plaintiffs' house is not the subject to a foreclosure action, and it has not been sold.[5]

### b. Plaintiffs' Negligence Claim Insufficiently Alleges That Defendants Owed Them a Duty of Care

"In order to state a cause of action in negligence, the plaintiff must show the following: (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty."  *Rosenblatt v. Exxon Co.*, 335 Md. 58, 76 (1994) (citation omitted).  "The existence of a legally cognizable duty owed by the defendant to the plaintiff or a class of persons of which the plaintiff is a member is essential to a cause of action for negligence."  *Id.* (citation omitted).  Maryland courts have found that "[i]n essence, the determination of whether an actionable duty exists represents a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant."  *Blondell v. Littlepage*, 413 Md. 96, 120 (2010) (collecting cases).

Defendants argue that the Amended Complaint insufficiently establishes each of the required elements of negligence. Doc. No. 32 at 27-34. Defendants contend that Plaintiffs fail to allege any basis for finding any legal duty owed to the Plaintiffs.  Additionally, Defendants

---

[5] Plaintiffs now argue that Defendants "incorrectly read both sections as requiring an order ratifying a foreclosure sale as a precondition for accrual of a cause of action for violation of the sections."  Doc. No. 45 at 18.  Plaintiffs contend that §§ 7-105.1(o) and 7.105.2(e) are statutes of repose rather than statutes of limitations.  *Id.*  They suggest that "the legislature established a limitation on the potential liability of persons who violate [these sections] to three years from the date of an order of ratification."  *Id.* at 18-19.  Plaintiffs fail to cite any authority for their statutory interpretation.  Plaintiffs' interpretation is incorrect because the plain language of the statutes require "ratification of a sale."

maintain that the statutory provisions on which Plaintiffs rely to claim that Defendants owe them some duty cannot form the basis for a negligence *per se* claim.  *Id*. at 35-36.

Plaintiffs rely on Maryland Rule 14-305[6] and MD. CODE ANN. REAL PROP. §§ 7-105.1 and 7-105.2 as statutory bases for the duty prong.  *See* Am. Compl. ¶¶ 181-187; 189.  Each provision, however, contemplates procedures and duties that arise *after* a foreclosure sale or ratification.  As discussed above, Plaintiffs are still living in their home and no foreclosure action is currently pending.  Am. Compl. ¶ 140.  Thus, it is unclear what duty Defendants owed to Plaintiffs.

For example, Plaintiffs concede that as to the Lembachs, no causes of action under §§ 7-105.1 and 7-105.2 have yet accrued, as no sale or ratification has taken place.  If no violation of these statutes has occurred, and may never occur, it makes little sense to allow Plaintiffs to assert a negligence claim stemming from alleged violations of these statutes.  Moreover, Rule § 14-305 governs the procedure following a foreclosure sale (up through final ratification).  Because the Lembachs have not been subject to a foreclosure proceeding and ratification of a foreclosure sale, they do not yet have a claim arising under Maryland laws or court rules.[7]

---

[6] Maryland Rule 14-305 mandates specific *post-foreclosure* sale procedures as a precondition to ratification of a foreclosure sale.

[7] To the extent that Plaintiffs' emotional distress allegation may be construed as an intentional or negligent infliction of emotional distress claim, it is subject to dismissal.  In order to succeed on a claim of intentional infliction of emotional distress, plaintiffs must demonstrate (a) intentional or reckless conduct that is (b) outrageous and extreme (c) causally connected to (d) extreme emotional distress.  *See Caldor, Inc. v. Bowden*, 330 Md. 632, 641-42 (1993).  The Amended Complaint contains only conclusory statements that the foreclosure process has caused mental anguish.  *See, e.g.*, Am. Compl. ¶¶ 114, 141.  Additionally, Maryland does not recognize a tort action for negligent infliction of emotional distress.  *See, e.g.*, *Lapides v. Trabbic*, 134 Md. App. 51, 66 (2000).

Therefore, the Court finds that Plaintiffs have not sufficiently pled that Defendants owed them a duty of care, or that the breach of any duty proximately caused them injury, and the Court will dismiss the Negligence claim.[8]

### c. Plaintiffs Fail to Plead a Violation of the Maryland Consumer Protection Act ("MCPA") and the Maryland Consumer Debt Collection Act ("MCDCA")

"The Consumer Protection Act, codified at Maryland Code . . . §§ 13-101 *et seq*. of the Commercial Law Article was intended to provide minimum standards for the protection of consumers in the State." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 140 (2007) (quotation omitted). An individual "alleging unfair or deceptive trade practices may file a complaint with the Attorney General's office, § 13-401 or bring a private cause of action[,] § 13-408." *Id*. A person who files a complaint with the Attorney General need not allege that an actual injury occurred; however, a person bringing a private cause of action pursuant to § 13-408 must allege that an actual injury occurred. Requiring actual injury in private suits strikes an important balance between two competing legislative objectives: preventing unfair or deceptive practices while precluding aggressive, "self-constituted private attorneys general" from bringing suit "over relatively minor statutory violations." *Citaramanis v. Hallowell*, 328 Md. 142, 152 (1992) (quotation omitted).

### i. Defendants are Exempt Under the MCPA

Section 13-104 exempts various professional services from the MCPA, including lawyers. *See* MD. CODE ANN. COM. LAW § 13-104(1); *Robinson v. Fountainhead Title Group Corp.*, 447 F. Supp. 2d 478, 490 (D. Md. 2006). Plaintiffs attempt to avoid the exemption by arguing that Defendants "were not acting within the scope of their license as attorneys" when they were appointed as trustees in the foreclosure proceedings "and therefore are not entitled to

---

[8] The Court will also dismiss Plaintiffs' respondent superior claim because there is no separate cause of action for respondent superior; rather, it is a doctrine that imputes liability for a cause of action to a principal.

claim any exemption from liability."  Am. Compl. ¶ 199.  Defendants are exempt, however, because this Court has applied the exemption to dismiss MCPA claims against the enumerated professionals even when plaintiffs have alleged that they were acting in some way other than their professional capacity.  *See Robinson*, 447 F. Supp. 2d at 490 ("Plaintiff contends that she did not sue Long & Foster because of its activities as a realtor, but because it worked in conjunction with the other defendants to establish the sham company-Assurance Title. Plaintiff's allegations, nonetheless, concern the "professional services" of Defendants and this claim will be dismissed.").

### ii.  In the Alternative, Plaintiffs Fail to Allege a MCPA Claim

Even if the Defendants are not exempt, the Plaintiffs fail to allege a MCPA claim.  The Court of Appeals of Maryland has concluded that a consumer bringing a private action under § 13-408 must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury.  *Lloyd*, 397 Md. at 143 (finding that a plaintiff must demonstrate that he or she "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation"); *see also Bank of America v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 532 (D. Md. 2011) ("Consumers must prove that they relied on the misrepresentation in question to prevail on a damages action under the MCPA.  A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice.") (citations omitted); *Farwell v. Story*, Case No. DKC-10-1274, 2010 WL 4963008, at *8-9 (Dec. 1, 2010) (dismissing MCPA claim because plaintiff failed to allege reliance); *Willis v. Countywide Home Loans Servicing*, Case No. CCB-09-1455, 2009 WL 5206475, at *6 (D. Md. Dec. 23, 2009) (dismissing MCPA claim because plaintiff failed to allege "that Countrywide's misinformation regarding loan

modification programs caused [plaintiff] to suffer any specific harm, apart from the debt that he already owed").

Defendants argue that the Amended Complaint fails to sufficiently allege facts to support the reliance and damages elements of a MCPA violation.  Doc. No. 32 at 36-38.  Defendants here make materiality and reliance arguments identical to those that they made with respect to the FDCPA claims and cite many of the same FDCPA cases in support.  *Id.*  They argue that Plaintiffs have not sufficiently alleged that Defendants' acts misled Plaintiffs in a way that injured them.  *Id.*  The Plaintiffs maintain that violations occurred based on Defendants' actions of "claiming, attempting, or threatening to enforce rights with the knowledge that the right did not exist."  Am. Compl. ¶ 201.  Once again, Defendants' argument is persuasive.

As discussed above, Plaintiffs fail to indicate how the alleged forgeries of the foreclosure documents materially impacted the debtors' conduct or how the signatures caused Plaintiffs a specific harm separate from the debt owed.  The manner or procedure of affixing signatures to documents that are accurate in every other way except for the signature does not affect the accuracy of the underlying debt.  Plaintiffs have conceded that they were late on their mortgage payments.   The actual process and method of affixing signatures to court documents is immaterial to a debtor where the existence of the debt and a default are not disputed.

Therefore, Plaintiffs' MCPA claim will be dismissed because Defendants are exempt under the MCPA, or in the alternative, because Plaintiffs fail to allege facts that demonstrate Defendants' actions were material and relied upon by Plaintiffs.

### iii.  Plaintiffs Fail to Plead Knowledge Under the MCDCA

The MCDCA provides that a debt collector may not "claim, attempt, or threaten to enforce a right with *knowledge that the right does not exist*."  MD. CODE ANN. COM. LAW

§ 14-202(8) (emphasis added).   Plaintiffs' MCDCA claim fails because it merely recites the statutory language.   Plaintiffs allege that Defendants "violated the MCDCA by claiming, attempting, or threatening to enforce rights with the knowledge that the right did not exist." Am. Compl. ¶ 201.   Plaintiffs fail to allege facts sufficient to state a claim to relief that is plausible on its face.   *See Simmons*, 634 F.3d at 768.

The MCDCA "protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts."   *Shah v. Collecto, Inc.*, DKC-04-4059, 2005 WL 2216242, at *10 (D. Md. Sept. 12, 2005) (quotation omitted).   In order to succeed on such a claim, the express language of the MCDCA requires that Plaintiffs allege that Defendants acted with knowledge as to the ***invalidity*** of the debt.   *See id.*; *Akalwadi*, 336 F. Supp. 2d at 511 ("[K]nowledge can either mean actual knowledge or that the defendant acted with reckless disregard.").

Defendants argue that "Plaintiffs have failed to sufficiently allege the knowledge element of the MCDCA."   Doc. No. 32 at 40.   They also note that Plaintiffs concede that "the right to foreclose on Plaintiffs' property did exist."   *Id.* (citing Am. Compl. ¶ 116).   In their opposition memorandum, Plaintiffs did not address the issue of knowledge under the MCDCA.   Again, Defendants' argument is persuasive.

The Orders to Docket were correct in every way except for the signatures that were affixed with the authority of the purported signer, but not in fact signed by the person whose name was affixed.   Plaintiffs fail to allege any facts that demonstrate that Defendants had knowledge that the right to initiate foreclosure proceedings did not exist.   In fact, Plaintiffs concede they were in default on their mortgage payments.   *See* Am. Compl. ¶ 116 ("The Lembachs fell behind on their mortgage payments.").   Although Plaintiffs take issue with the

method used by Defendants to attach signatures to foreclosure documents, the MCDCA allows for recovery against creditors that attempt to collect debts when there is no right to do so.  It does not, as the Plaintiffs appear to contend, allow for recovery in errors or disputes in the process or procedure of collecting legitimate, undisputed debts.

## V.      Conclusion

Although the Defendants' shortcuts in the initiation and docketing of foreclosure proceedings against the Plaintiffs did not comply with Maryland laws and rules, the facts alleged by Plaintiffs in their Amended Complaint fail to state a claim upon which relief can be granted.  This Court recognizes that attorneys are required to adhere to procedural rules that have been created to ensure a fair and orderly foreclosure process.   Here, however, the alleged misrepresentations only involved the method of applying signatures to otherwise factually correct legal documents.  The Plaintiffs do not allege factual inaccuracies regarding the existence of a secured debt or the delinquency of the Plaintiffs.  Additionally, the Plaintiffs still live in their home, and no foreclosure action is pending against them.  Thus, the Plaintiffs are not now entitled to relief.  For the foregoing reasons, Defendants' motion to dismiss will be granted and Plaintiffs' motions will be denied.  A separate order follows.


<u>May 8, 2012</u>                                    _____/s/_____
Date                                                      Roger W. Titus
                                                          United States District Judge

24